32687.   AETNA LIFE INSURANCE COMPANY *v.* JONES.

Decided October 11, 1949. Rehearing denied November 23, 1949.

*Wilson, Bennett, Pedrick & Bennett, Bryan, Carter & Ansley,* for plaintiff in error.

*Blalock & Blalock, Harry D. Reed,* contra.

GARDNER, J. ▆ It is insisted by the defendant insurance company that the insured did not die as a result of an accident, that is, directly and independently of all other causes from bodily injury effected solely through external, violent and accidental means, but that her death was directly or indirectly the result of Parkinson's disease, with which she was afflicted; in other words, that such disease was at least a contributing and concurring cause of her death, and in such a case, it was not liable under the double-indemnity provision of the policy quoted in the statement of facts heretofore. In grounds 4, 5 and 6 of the motion for new trial, as amended, the defendant insurance company insists that the verdict was unsupported by any evidence and that a verdict for it was demanded—that no other verdict than that the insured did not die solely as a result of accident but died from her diseased condition could have been returned by the jury. If there was any evidence from which the jury could find that the insured died as a result of the fracture to her hip and the consequences thereof, then the verdict is authorized and the contention of the insurance company is not well founded. On the trial the following facts appeared from the evidence: The insured died within ninety days from the date she fell and fractured her hip. She was 64 years old when she died. For some 15 years prior to her death, she suffered from Parkinson's disease, causing partial paralysis and muscular tremors. She gradully grew worse each year from this disease. Other-

wise, the insured was in general good health and had little, if any, need for medical treatment. She would get a little more feeble each year. A nurse-companion was kept with her during the day to assist her in walking, dressing and eating. The insured was partly paralyzed as a result of this disease. While she could walk alone, she ordinarily did not do so. She could not comb her hair, but she could turn the leaves of a book. Her gait or locomotion was affected and while the muscles of her arms were affected, the disease seemed to be mostly in the left arm. On the day she fell, she was in the living room with the nurse and was standing at the table, balancing with her right hand resting on the table, while the nurse was rearranging the chair so she could be seated. She could stand if she had her hand on a table or chair or anything. She could stand very well that way. She stood without any support at times. She would just put one hand on the table or something where she could rest it and she would stand perfectly safe then, and that was done often, any time she desired. She was, on the occasion when she fell, so standing. The nurse had walked her over to the table and placed her hand on the table so she could stand while the chair was being prepared, and when the nurse turned her back, Mrs. Jones screamed, and when the nurse looked, she was going down. The nurse did not see her when she fell. When the nurse looked around she had not quite hit the floor. "She just dropped down over on that hip. . . She had not slipped or undertaken to go anywhere. . . She did not slip or trip on anything that I saw. There was not anything for her to have tripped on." No one but the plaintiff's wife and the nurse were in the house when the insured fell. They called the plaintiff and he arrived in about ten minutes. They had raised the insured from the floor and placed her in a straight chair and she was suffering and in great agony when the plaintiff arrived. When the plaintiff walked in, he was informed that the insured had fallen. There was much confusion there at the time. The plaintiff asked the insured "What's the matter?" And she replied, "I fell and hurt myself. . . My hand slipped off the table and I fell." The plaintiff tried to get the insured on her feet but she said, "I can't put my weight on my feet, I feel like something is broke." Mrs. Jones said her hand slipped from the

table and she fell. That statement was made immediately after I got to the house. I would say I was only five minutes getting there from the time I received the message. It couldn't have been over fifteen minutes since she fell until I was there, probably ten. The insured was then complaining of suffering, she had not been put into bed. The doctor's first opinion was that she had just bruised her hip, but as she failed to get any better and remained in bed some twenty-five days after the fall, she was taken to the hospital, where it was discovered that she had a fracture of the neck of the left femur. She was operated on and a pin was driven into her hip to hold the fractured part in place. She was able to leave the hospital in about a week and apparently was responding to the operation. However, she did not improve, was unable to get out of bed and grew rapidly worse upon reaching home. Pressure or bed sores developed over her buttocks—a very bad one near the rectum. These sores became badly infected and sloughed. Dr. H. A. Seaman, who operated on the insured, testified that the pressure sores developed from having to remain in bed, and the delay in the treatment of the broken bone, and that the pressure sores are dangerous to life and will cause death. He testified that the accidental injury in this case caused the deceased to lie in bed for a long period of time before the operation, and that they were unable to get the insured out of bed after the operation and as a result thereof these sores developed and became infected.

Dr. W. L. Pomeroy, in his death certificate, stated that the proximate cause of the insured's death was the fracture of the neck of the left femur, and the contributing cause being encephalitic Parkinson's disease and the sloughing of the buttocks and left hip in the region of the fracture. He stated "Anything that might have put her in bed would certainly have had a tendency for her to develop bed sores. I don't remember anything preceding the fall that might have made it necessary for her to remain in bed if she had not had the fall. This disease was taking a usual and expected course and in the absence of such injury as this, or some other disease, she might have been expected to live for a number of years." Dr. W. L. Pomeroy also testified that the fracture was the proximate cause of the insured's death and that the Parkinson's disease was a contribut-

ing or concurring cause. This was the only testimony before the court to show that the disease aided in bringing about the death of the insured. The other physician, Dr. H. A. Seaman, testified: "The fracture of the hip bone in the neck of the femur is a serious injury to every individual. It is a serious injury in a person above sixty years old and is capable of producing death. I have seen them die from it. We usually attribute the proximate cause of death in those individuals to the fracture. . . People that are confined to bed—elderly people—for a great length of time, unless they are moved frequently, etc., they develop pressure sores, and we just ordinarily call those bed sores. That is from being in bed and not being able to get up and around. Pressure sores endanger life. It is a dangerous condition." Dr. Seaman testified as to matters from which the jury could have determined that the fractured hip and its consequences, considering the age of the insured, produced her death. While there was some conflict in the evidence, particularly as to Parkinson's disease, how it affected the insured, the extent of the tremors, and so on, and as to the disease contributing to her death and as to how the insured fell or what she stated at the time she fell, the jury were authorized to find that the death of the insured resulted wholly from said fall and the consequences resulting therefrom, that is, that she did not die from the disease but from the fractured hip and its consequences.

It is contended by the insurance company that the death of the insured did not result directly and independently of all other causes solely through external, violent and accidental means but did result directly or indirectly from disease and that under the plain provisions of the policy sued on, it was not liable to the plaintiff under the double-indemnity clause of the policy. The case is one where, in order for the above contention of the defendant to be well taken, the facts demand such a finding. It is a case where if there was any evidence at all to the effect, or from which the jury could infer that the death of the insured was caused by the fall and the fractured hip, the verdict of the jury was authorized under the evidence and will not be disturbed by this court. The evidence did not demand a finding that the Parkinson's disease of the insured contributed to her death. The evidence presented an issue which the jury determined adversely

to the claim of the defendant. The evidence was not conclusive that the disease caused the hand of the insured to slip from the table. A finding to that effect would have been supported by the evidence but the evidence did not demand such a finding. The evidence is not conclusive that but for the partially paralyzed condition of the insured the fall, fracture and consequences therefrom, would not have produced her death.

. In *Overstreet* v. *Metropolitan Life Ins. Co.*, 69 *Ga. App.* 459 (26 S. E. 2d, 115), relied on by the insurance company, "there was no evidence that the fall was accidental or was caused by accidental means, or that it was not caused by physical disease or infirmity" and this court held that the trial judge did not err in directing a verdict for the insurer in a suit to recover under the double-indemnity provisions of the policy. In *Fulton* v. *Metropolitan Cas. Ins. Co.*, 19 *Ga. App.* 127 (91 S. E. 228), there was a directed verdict for the insurance company and this court ruled that the court did not err in directing it, where the evidence was not "sufficient to make a jury question" as in the case at bar. Similar cases relied on by the defendant, such as *Johnson* v. *Aetna Life Ins. Co.*, 24 *Ga. App.* 431 (101 S. E. 134), and *Newman* v. *Benefit Assn. of Railway Employees*, 42 *Ga. App.* 342 (156 S. E. 284), are distinguishable on their facts from the present case. The plaintiff in error cites a number of decisions by outside jurisdictions, such as Prudential Ins. Co. *v.* Van Wey, 223 Ind. 198 (59 N. E. 2d, 721), which are distinguishable, and which are, furthermore, not binding on this court. In the Van Wey case the fall by the insured was of unknown origin. Here the hand of the insured slipped and she fell.

■ Error is assigned by the defendant insurance company on the admission of certain testimony of the plaintiff that the insured told him her hand slipped off the table and she fell. The plaintiff, when he arrived at the house where his stepmother, the insured, had fallen, some ten or more minutes after the fall and in response to a call for him to come home, asked the insured "What's the matter?" The insured replied "I fell and hurt myself. . . My hand slipped off the table and I fell. . . I can't put my weight on my feet, I feel like something is broke." The witness testified that the above statement was made "immediately after I got to the house. I would say I

was only 5 minutes getting there from the time I received the message. It couldn't have been over 15 minutes since she fell until I was there, probably 10."

Code § 38-305 defines res gestae testimony as follows: "Declarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, shall be admissible in evidence as part of res gestae." What is res gestae of a given transaction must depend upon its own peculiarities of character and circumstances; courts must be allowed some latitude in the matter; declarations of party must be calculated to unfold nature and quality of the transaction and must harmonize with it. *Standard Oil Co.* v. *Reagan*, 15 *Ga. App.* 571 (2) (84 S. E. 69). The admissibility of such declarations does not depend upon any arbitrary time or general rule for all cases, but is left to the sound discretion of the court in determining from the time, circumstances and statements in question, whether declarations meet the requirements of being free from "all suspicion of device or afterthought." *Davis* v. *Metropolitan Life Ins. Co.*, 48 *Ga. App.* 179 (172 S. E. 467). So declarations must be contemporaneous with the main fact, but need not be precisely concurrent in point of time it is sufficient if such declarations spring out of the transaction, if they elucidate it, if voluntary and if made at such time as reasonably to exclude the idea of design. Inquiry is rather into events than into the precise time which has elapsed. See *O'Neal* v. *State*, 172 *Ga.* 526 (158 S. E. 51), *Mitchum* v. *State*, 11 *Ga.* 615. The statement of the insured resulted from natural questions asked her by her stepson immediately upon his entering the house in response to a message, and he testified that not over 15 minutes, probably 10, had elapsed between the time she, the insured, fell and he got there. The insured was in much pain and there was no suggestion that her statement as to why she fell was the result of any idea or design. She was asked "What's the matter?" She immediately replied to her stepson "I fell and hurt myself. . . My hand slipped off the table and I fell." This was not a narration of past events. It was a spontaneous statement, part of the entire transaction, made just a matter of minutes after the actual fall, breaking her hip, and when she was in pain and

agony. It was made before she had been taken or carried from where she fell to her bed. Her stepson was called to the house for this purpose. In these circumstances, it is our opinion that the court did not abuse its discretion in admitting this testimony of the stepson as to what the insured had stated as part of the res gestae of the transaction.

The defendant insurance company urges, in its amendment to the motion for new trial, that this testimony was hearsay and does not fall within the res gestae exception of the hearsay rule. The cases relied on by the defendant company of *Western & Atlantic R. Co. v. Beason*, 112 *Ga.* 553 (37 S. E. 863), *Fulton v. Metropolitan Cas. Ins. Co.*, 19 *App.* 127 (supra), *Ensley v. Pollard*, 56 *Ga. App.* 884 (194 S. E. 426), *Warrick v. State*, 125 *Ga.* 133 (53 S. E. 1027), *Cole v. State*, 125 *Ga.* 276 (53 S. E. 958), and *Park v. State*, 126 *Ga.* 575 (55 S. E. 489), do not require a reversal of the trial judge on this ground. In those cases the particular testimony dealt with consisted of narrative statements as to past occurrences and were made "deliberately and connectedly" and in no sense were exclamatory and spontaneous statements proceeding as a part and parcel of the main transaction. The insured here fell, there were two other women in the house, they endeavored to assist the fallen woman, they could not, an emergency call was made for her stepson to return home and aid in lifting the injured woman and assisting her to her bed, and he came within 10 or 15 minutes. We can visualize the scene there. All was confusion, the insured was in great agony. It was perfectly natural for the witness and stepson to exclaim "What's the matter?" And it was just as natural for the injured woman, without design or afterthought, to reply "I fell and hurt myself. . . My hand slipped off the table and I fell." Under the facts and circumstances prevailing here, this testimony was not erroneously admitted. In *Cole v. State*, supra, the transaction was entirely over and the statement by the accused to the witness was simply a narration of a past event. Too, in that case, the accused had just slain a man. He knew he would be charged with the homicide. Here there is nothing to indicate that the insured had this double-indemnity policy in mind when she stated "I fell and hurt myself. . . My hand slipped off the table and I fell." She had no way of

knowing that she would die as a result of the fall and that her stepson would institute a suit against the insurer on the policy. While the statement by the insured was from 10 to 15 minutes after she fell, it was spontaneously made and so close to the event as to be free from suspicion of afterthought or design.

Applying the above ruling, the trial judge did not err in overruling the amended motion for new trial.

*Judgment affirmed. MacIntyre, P. J., and Townsend, J., concur.*