*Attorney General,* for appellees.

## 63234. WILLIAMS v. THE STATE.

BANKE, Judge.

The defendant, Hosea Lorenzo Williams, was convicted on the felony charge of operating a motor vehicle after revocation of his driver's license as an "habitual violator" and on the misdemeanor charge of leaving the scene of an accident without stopping to render aid. This appeal is from the denial of his motion for new trial.

At the outset of the trial, defense counsel stipulated that Williams had been declared an habitual violator by court order in 1975 and that he was still "under" that court order on July 18, 1980, when the events at issue in this case took place. The factual question which the jury was called upon to decide was accordingly limited to whether Williams was the driver of a rented Buick automobile which collided with another car on that date.

The driver of the other vehicle involved in the collision testified that he had been hit nearly head-on when the Buick attempted to turn left in front of him and that, while he was dazed from a blow to his head, a person came up to the car, looked in, turned around, and left. The victim remained in his car, bleeding from a head wound, until others arrived on the scene a few minutes later, removed him from the car, and attended to his injuries. His car subsequently rolled several hundred feet down a hill.

Two residents of the area who had proceeded to the scene immediately upon hearing the crash testified that they overheard an unidentified black male in the crowd of onlookers remark that the driver of the abandoned vehicle was Hosea Williams. A third such resident testified that he heard an unknown declarant state that the driver had been wearing a flowered shirt and "looked like" Hosea Williams. All of this testimony was admitted under the *res gestae* exception to the hearsay rule.

Police officers and emergency medical personnel first arrived on the scene at about 8:20 p.m., which, from the testimony of other witnesses, appears to have been only minutes after the first onlookers arrived. A search of the Buick revealed various documents addressed to and from Hosea Williams, as well as a rental car agreement in Mrs. Williams' name. Based both on this information and on information received from persons at the scene, a radio lookout was broadcast for a black male in the area wearing a flowered shirt, who might possibly be Hosea Williams. Several minutes later, Williams was located at a

bingo parlor which he operated about a mile from the site of the accident. He was wearing a flowered shirt, had a cut over his right eye, and was described by the arresting officer as appearing "real shaky, disoriented."

A police accident investigations expert who had examined the scene shortly after the collision testified that the driver of the Buick appeared to have struck the vehicle's rearview mirror. He based this conclusion on the fact that the rearview mirror was broken off at its base, it had a grease smear on it of the type normally left by contact with human skin, and there were blood stains on the dash underneath the spot where the mirror had been located.

At the police station, Williams claimed a briefcase containing some $1,400 in cash found in the Buick's trunk. He also claimed a bag of tomatoes which had been found in the car. A customer from the bingo parlor testified that she had given Williams a bag of tomatoes on the evening in question and that he had left the building carrying both the tomatoes and his briefcase just before 8:00 p.m. This witness further testified that after she learned of Williams arrest she told him, "I think it was mean of you to get out of that car and leave my tomatoes," and that Williams responded, "No, I didn't leave them. I took them with me."

Williams characterized the case against him as a "political persecution." He denied that he had been the driver of the Buick and surmised that the car had been stolen from in front of the bingo parlor after the briefcase and tomatoes had been placed inside it. He testified that he had been present at the bingo parlor at the time the accident occurred and that he had cut his head on a door just prior to his arrest. Four witnesses, three of them employees of the bingo parlor and two of them Williams' children, offered testimony in support of this account; however neither Williams nor anyone acting on his behalf ever reported the alleged theft of the Buick to police. Furthermore, no mention of the alleged theft was made in an accident report which Williams' son later submitted to the rental car company. The person driving at the time of the collision was instead listed as one of Williams' employees.

A registered nurse employed at the county jail testified that she had examined the cut over Williams' eye on the night of his arrest and had concluded that it was deep enough to require sutures. In order to rebut this testimony, the defense introduced two photographs of Williams purportedly taken on July 19, 1980, the day following the accident, neither of which revealed any injury to his face or head. However, the photographer called upon to establish the date of these photographs admitted on cross-examination that she had attempted to falsify a receipt relied on to support her direct examination

testimony, stating that she had in fact prepared the receipt on the day of trial rather than July 19, 1980.

In this appeal, the defendant does not challenge the sufficiency of the evidence against him as to the "hit and run" charge but does contend that the evidence is insufficient to support the habitual violator conviction. He also raises several procedural issues. *Held:*

1. It appears from the record that the defendant was declared an habitual violator by the DeKalb County Superior Court on May 28, 1975, and was ordered at that time "not to operate a motor vehicle on the public highways of the State of Georgia for the period beginning on the 28th day of May 1975 and continuing *until such time as the defendant shall have his privilege to operate a motor vehicle restored by a court having jurisdiction as provided by law.*" (Emphasis supplied.) On June 6, 1980, the same judge who had entered this order entered another order granting authority to the Department of Public Safety to reinstate Williams' license, based upon a finding that the 5-year suspension period had expired. Both of these orders were based upon Ga. L. 1972, pp. 1086-1091 (former Code Ann. §§ 92A-455 through 92A-464), which placed the authority to declare habitual violator status in "the court of record having jurisdiction of criminal offenses in the political subdivision in which such person resides." Ga. L. 1972, pp. 1086, 1089 (former Code Ann. § 92A-458). It was a felony offense under this statute for a person adjudged to be an habitual violator to operate a motor vehicle in Georgia "while the order of the court prohibiting such operating is in effect. . ." Ga. L. 1972, p. 1090 (former Code Ann. § 92A-9936).

Subsequent to the entry of the 1975 court order declaring Williams to be an habitual violator, the 1972 statute was repealed (see Ga. L. 975, pp. 1008, 1044-1045) and was replaced by Code Ann. §§ 68B-307 *et seq.* (Ga. L. 1975, pp. 1008, 1030-1041). Code Ann. § 68B-308 (a), places the authority to determine habitual violator status in the Department of Public Safety rather than the courts. Code Ann. § 68B-308 (c) authorizes felony punishment for "[a]ny person declared to be an habitual violator and whose driver's license has been revoked *under the provisions of this section* who is thereafter convicted of operating a motor vehicle, while his license is so revoked. . ." (Emphasis supplied.) Ga. L. 1975, pp. 1008, 1034, as amended through Ga. L. 1980, pp. 691, 695.

It is apparent that the indictment was drawn under the 1975 statute rather than the 1972 statute, for it charges Williams with operating a motor vehicle after "having been declared an habitual violator by the Department of Public Safety of Georgia and not having first obtained a valid driver's license." However, the defendant cannot be convicted of this offense, since he was not

declared an habitual violator by the Department of Public Safety, and his license was not revoked under the provisions of the 1975 statute. The 1972 statute, on the other hand, has been repealed in its entirety, and even had it not been, its criminal sanctions would not apply to the defendant, since the court order prohibiting him from operating a motor vehicle was rescinded before the collision occurred. See Ga. L. 1972, pp. 1086, 1090.

The state cites Opinion No. 80-94 of the Attorney General of Georgia, issued July 19, 1980, as authority for the proposition that the 1975 statute does apply. However, we find that opinion totally inapposite, as it merely states that Code Ann. § 68B-310, which establishes the procedures to be used by the Department of Public Safety in responding to applications by habitual violators for the issuance of new driver's licenses, should be followed "without regard to whether the applicant habitual violator was properly determined to be such by the superior court or by the Department of Public Safety." The opinion does not address the question of whether a person may be convicted of a felony under the 1975 statute where his habitual violator status was both declared and rescinded under the 1972 statute. Furthermore, opinions of the Attorney General are not binding upon this court, even where applicable to the issues before us. See *Johnson v. Public Fin. Corp.,* 126 Ga. App. 557 (191 SE2d 334) (1972); *Warestores, Inc. v. Nash,* 125 Ga. App. 210, 213 (186 SE2d 806) (1971).

2. Although defense counsel stipulated prior to trial that the defendant was subject to prosecution under the 1975 statute, this stipulation must be regarded as null and void. "An attorney has the implied authority to bind his client by statements or admissions of fact made within the scope of his authority. However, neither his client nor the court is bound by his statements or admissions as to matters of law or legal conclusions." 7A CJS, Attorney & Client, § 206, p. 346. The undisputed evidence in this case demands the conclusion that the defendant was in violation of neither the 1972 nor the 1975 statute at the time the collision occurred.

3. The court did not err in allowing the testimony of the three bystanders who overheard an unknown declarant state that the person driving the Buick looked like Hosea Williams. These witnesses had no apparent interest in the outcome of the case and each stated that the unknown declarant had made the statements without prompting, only 10 to 15 minutes after the event. Under these circumstances, the trial court acted within its discretion in finding the declarations to be part of the *res gestae.* See generally Code § 38-305; *Gaines v. State,* 232 Ga. 727 (5) (208 SE2d 798) (1974); *Hawes v. State,* 240 Ga. 327 (6) (240 SE2d 833) (1977); *Land v.*

*McClure,* 135 Ga. App. 243 (2) (217 SE2d 600) (1975).

4. The remaining enumerations of error are rendered moot by the foregoing. For the reasons previously stated, the habitual violator conviction (Count 1) is reversed. The conviction for leaving the scene (Count 2) is affirmed.

*Judgment affirmed in part and reversed in part. Birdsong, J., concurs. McMurray, P. J., concurs in the judgment only.*

Decided May 24, 1982.

*R. David Botts,* for appellant.

*Robert E. Wilson, District Attorney, Susan Brooks, Assistant District Attorney,* for appellee.