**Hosea Lorenzo WILLIAMS,**
**Petitioner-Appellee,**

v.

**Wayne MELTON, et al.,**
**Respondents-Appellants.**

No. 83–8464.

United States Court of Appeals,
Eleventh Circuit.

June 7, 1984.

Rehearing and Rehearing En Banc
Denied Aug. 9, 1984.

---

Robert E. Wilson, DeKalb County Dist. Atty., James M. McDaniel, Susan Brooks, Asst. Dist. Attys., Decatur, Ga., for respondents-appellants.

Tony L. Axam, Atlanta, Ga., for petitioner-appellee.

Before RONEY, FAY and CLARK, Circuit Judges.

FAY, Circuit Judge:

Hosea Williams was convicted in state court of leaving the scene of an accident without rendering aid and was sentenced to one year incarceration. During trial, the judge admitted into evidence certain hearsay statements under the Georgia *res gestae* exception to the hearsay rule. After exhausting his state remedies Mr. Williams filed a petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 (1980).[1] The United States District Court for the Northern District of Georgia, 568 F.Supp. 104, granted his habeas petition finding that the admission of the hearsay statements deprived Mr. Williams of his sixth amendment right to confront witnesses against him. After a careful review of the record we find innumerable indicia of reliability in this case which gave the jury an independent basis for evaluating the truth of the hearsay statements even though there was no confrontation of the unavailable declarant. There was no violation of Mr. Williams' sixth amendment right and we therefore reverse the district court's granting of the petition.

FACTS

On July 18, 1980, two automobiles collided at the intersection of McAfee Road and Laurel Lane in Dekalb County, Georgia. Cyrus Broadus, the driver of one of the vehicles involved in the collision, was hit nearly head-on when the driver of another car attempted to turn left in front of him. Mr. Broadus was injured in the accident and remained in his car until bystanders were able to remove him. His car then rolled several feet down a hill and into a ditch. The other car had stopped near a pole at the intersection but the driver of the vehicle was nowhere to be found.

Within a few minutes of the accident, the police arrived at the scene. They searched the abandoned car for information indicating who the driver might be and found various documents addressed to and from a Mr. Hosea Williams. They also found a Hertz rental agreement in the name of Mrs. Hosea Williams. Several bystanders then told the police that, shortly after the

[1]. The trial judge sentenced Mr. Williams to one year of incarceration for the misdemeanor conviction. He had served approximately four and one-half months of the sentence when he was released on bond by the federal district judge pending disposition of his habeas petition. He remains subject to serving the balance of his sentence.

collision, they had overheard an unidentified man remark that the driver of the abandoned car looked like Hosea Williams and was wearing a flowered shirt. R.Vol. I. at 102, 116, 126.

Based on this information Hosea Williams was arrested within thirty minutes at his place of business, the Bingo Palace. He was wearing a flowered shirt and had a cut over his right eye. R.Vol. I. at 200, 240–242. At the station the police found a briefcase in the car trunk with $1,400.00 in receipts from the Bingo Palace. Mr. Williams claimed the briefcase with the money. R.Vol. I. at 293–295, 298. The police also found a plastic bag of tomatoes in the front seat of the car. R.Vol. I. at 292.

Mr. Williams was indicted and tried on two counts, a felony count charging him with operating a motor vehicle after revocation of his driver's license and a misdemeanor count, which charged him with leaving the scene of an accident without stopping to render aid. During the trial the judge admitted into evidence, under Georgia's *res gestae* rule, the hearsay testimony of three bystanders. All of them testified that they clearly remembered an unknown declarant at the scene of the accident stating that the driver of the abandoned vehicle looked like Hosea Williams. The jury had to decide whether Williams was the driver of the rented, abandoned automobile involved in the collision. They concluded that he was the driver and returned a verdict of guilty on both counts.

The Georgia Court of Appeals reversed Mr. Williams' felony conviction but affirmed his misdemeanor conviction. *Williams v. State*, 162 Ga.App. 415, 291 S.E.2d 732 (1982). He filed a federal habeas petition and the federal district judge granted relief finding that Georgia's *res gestae* exception was vague and imprecise and that in this case it also violated the federal constitutional requirements imposed by the sixth amendment confrontation clause.[2] The state appeals the granting of the habeas corpus petition asserting that the admission of the hearsay testimony in this case, under Georgia's *res gestae* rule, did not violate the sixth amendment confrontation clause.

## GEORGIA'S RES GESTAE EXCEPTION

■ The term *res gestae* is almost incapable of a definition that covers all of the various and different uses it encompasses. *Walker v. State*, 137 Ga. 398, 73 S.E. 368 (1912). It literally means things happened and generally is used to refer to the transaction, occurrence, controversy or matter under investigation, whether it is the principal fact in question or a collateral one. *See, Kornicki v. Calmar Steamship Corp.*, 460 F.2d 1134 (3d Cir.1972); *Black's Law Dictionary*, 1173 (5th ed. 1979). Even though hearsay, any circumstances, facts or declarations which are automatic and undesigned incidents of the particular litigated act are admissible evidence as part of the *res gestae* if they help to clarify the fact in question. *Id.*

■ Georgia codified a *res gestae* exception in 1863 and since then it has consistently been used in the Georgia courts.[3] *See e.g., Standard Oil v. Reagan*, 15 Ga. App. 571, 84 S.E. 69 (1915); *Jones v. State*, 62 Ga.App. 734, 9 S.E.2d 707 (1940); *Shapiro Packing Co. v. Landrum*, 109 Ga.App. 519, 136 S.E.2d 446 (1964); *Gaines v. State*, 232 Ga. 727, 208 S.E.2d 798 (1974);

---

**2.** The sixth amendment provides in part: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." The right to confrontation is a fundamental right applicable to the states under the fourteenth amendment. *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

**3.** We disagree with the district court's conclusion that the *res gestae* exception is not "firmly rooted in Georgia law." Although we find that it is a firmly embedded exception to the hearsay

rule we also note that it has been criticized by both the commentators and the courts. *See e.g., Cox v. State*, 64 Ga. 374, 410 (1897); Harper, *Res Gestae in the Georgia Law of Hearsay*, 5 Mercer L.Rev. 257 (1954). The four current generally prevalent exceptions that were part of the *res gestae* label are declarations of present bodily condition, declarations of present mental state or emotion, excited utterances and present sense impressions. *See Collins v. Francis*, 728 F.2d 1322 (11th Cir.1984); McCormick on Evidence 686–711 (2d ed. 1972); 4 Weinstein's Evidence ¶ 803(1)[01]–(3)[06] (1981).

*Black v. State,* 154 Ga.App. 441, 268 S.E.2d 724 (1980). The version presently in effect permits "[d]eclarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought," to be "admissible in evidence as part of the res gestae." O.C.G.A. § 24–3–3 (Michie 1982). The trial court, in its sound discretion, must decide on a case by case basis whether or not to admit the hearsay evidence. Based on the time, circumstances and statements in question the judge must determine whether the declarations meet the requirements of being free from all suspicion of device or afterthought. *Aetna Life Ins. Co. v. Jones,* 80 Ga.App. 472, 479, 56 S.E.2d 305, 309 (1949).

◼ Georgia case law has established a set of standards which must be met *before* the hearsay evidence is admitted on the basis of the *res gestae* exception. As a prerequisite to admission the declaration must appear to spring out of the transaction. *Mitchum v. State,* 11 Ga. 615 (1852). It must be voluntary and spontaneous, and so close in time to the event that it precludes the possibility of device or afterthought. *Clark v. State,* 142 Ga.App. 851, 237 S.E.2d 459 (1977). Georgia's *res gestae* exception distrusts "not after-speech but afterthought." *Travelers' Insurance Co. v. Sheppard,* 85 Ga. 751, 775, 12 S.E. 18, 26 (1890).

◼ Applying these standards to this case we find that the trial judge properly concluded that the statements of the unavailable declarant fell within Georgia's firmly rooted *res gestae* exception. The testimony at trial established a scenario of excitement and confusion. A car had turned into another car, almost head-on. The injured driver of the struck car had to be removed from his car by bystanders. His car then rolled several hundred yards and crashed into a ditch. In all this confusion, three different people overheard an unidentified declarant state, approximately ten to fifteen minutes after the accident,

that the driver of the abandoned car looked like Hosea Williams and that he was wearing a flowered shirt. R.Vol. I. at 98, 102. This declaration was a natural result of the incident and clarified it. It was voluntary and spontaneous and was made at a time so near to it that it reasonably precluded the idea of any deliberate design. The trial judge properly concluded that the declarations of the unidentified black male clearly fell within Georgia's *res gestae* exception to the hearsay rule. Yet our review cannot end here. Although the hearsay statements were properly admitted into evidence it is necessary also to determine whether this resulted in a violation of Mr. Williams' constitutional right to confront his adverse witnesses.

## SIXTH AMENDMENT CONFRONTATION CLAUSE

Appellant asserts, based on *Ohio v. Roberts,* 448 U.S. 56, 62–66, 100 S.Ct. 2531, 2537–39, 65 L.Ed.2d 597 (1980), that statements properly admitted as part of the firmly rooted *res gestae* exception do not violate *per se* a defendant's sixth amendment right to confrontation. We do not agree and do not read *Ohio v. Roberts* to establish such a rule. In *Ohio v. Roberts,* the Supreme Court found that testimony taken at a preliminary hearing, where the witness was thoroughly cross-examined, bore sufficient indicia of reliability to make the statements from the hearing admissible at trial, although the declarant was not available.[4] The Court stated that "[r]eliability can be inferred ... in a case where the evidence falls within a firmly rooted hearsay exception." *Id.* at 66, 100 S.Ct. at 2539. Yet this language in *Roberts* is only *dicta* because the Court did not find a firmly rooted hearsay exception. It seems to us it would be possible for a court to apply Georgia's firmly rooted *res gestae* exception in an unconstitutional manner. We should therefore examine the indicia of reliability present in this case so as to guarantee that petitioner's sixth amend-

---

**4.** The use of the transcript of the preliminary hearing was permitted by an Ohio statute which permits the use of such testimony when the witness cannot be produced at trial. *See* Ohio Rev.Code Ann. § 2945.49 (1975).

ment right to confrontation was not violated.

The sixth amendment right of an accused to confront the witnesses against him or her is a fundamental right. *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970). It is so basic that the Supreme Court has held that its denial, "without waiver ... would be constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it." *Smith v. Illinois*, 390 U.S. 129, 131, 88 S.Ct. 748, 749, 19 L.Ed.2d 956 (1968). The purpose of this right is not only to allow the defendant a chance at cross examination, but also to allow the jury to observe and judge the credibility of the witnesses. *Dutton v. Evans*, 400 U.S. at 89, 91 S.Ct. at 219.

■■■ The declarations of the unidentified male in this case are hearsay. Yet a finding that the statements are hearsay does not necessarily require a finding that the confrontation clause has been violated. *See e.g., Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970). The sixth amendment confrontation clause restricts the use of otherwise admissible hearsay in two ways. First, the prosecution must show that the out-of-court declarant is unavailable for trial. Second, where the declarant is shown to be unavailable, a hearsay statement may be used only if the circumstances provide sufficient indicia of reliability from which the jury can evaluate the truth. *Ohio v. Roberts*, 448 U.S. 56, 62–66, 100 S.Ct. 2531, 2537–39, 65 L.Ed.2d 597 (1980). In this case all parties have agreed that the hearsay declarant was unavailable. R.Vol. II. at 835. We must therefore only determine whether the circumstances surrounding the hearsay declarations contain sufficient indicia of reliability so as to satisfy the requirements of the confrontation clause.

■■ There is substantial circumstantial evidence in this case which provided the indicia of reliability needed by the jury to conclude that Hosea Williams was the driver of the abandoned car. Law enforcement officers who arrived on the scene shortly after the accident searched the car and found various documents addressed to and from Mr. Williams as well as a Hertz rental agreement for the vehicle in Mrs. Williams' name. R.Vol. I. at 173–174. Approximately thirty minutes after the accident Mr. Williams was arrested near the Bingo Palace, a business establishment operated by him and located within a mile of the scene of the accident. R.Vol. I. at 237–243; 249. He was wearing a flowered shirt, was somewhat disheveled and had a cut over his right eye. *Id.* An accident specialist with the county police department testified that the rearview mirror in the abandoned car had been broken off the windshield and cracked on the left side. Mr. Williams' wound and the broken mirror were consistent with the probable pattern of impact on the driver of the abandoned car. R.Vol. I. at 284–290. At the police station, a briefcase containing some $1,400.00 in receipts from the Bingo Palace was removed from the car trunk and claimed by Mr. Williams. R.Vol. I. at 293–297. A plastic bag of tomatoes was also found in the car. *Id.* A customer at the Bingo Palace, on the night of the accident, testified that she gave Mr. Williams a plastic bag of tomatoes that night and later saw him take the tomatoes and his briefcase and head for the front door of the Bingo Palace just before 8:00 p.m. R.Vol. I. at 154.

The evidence in this case overwhelmingly afforded the jury an opportunity to evaluate the truth of the unavailable declarant's statement. *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). The purpose of the confrontation clause is to increase the accuracy of the fact-finding process by guaranteeing that the defendant has an effective means of testing adverse evidence. Thus, hearsay marked with such trustworthiness that "there is no material departure from the reason of the general rule," *Snyder v. Massachusetts*, 291 U.S. 97, 107, 54 S.Ct. 330, 333, 78 L.Ed. 674 (1934), does not violate the confrontation clause. There was ample circumstantial evidence in this case to establish the trustworthiness of the hearsay *res gestae* declarations.

REVERSED.

CLARK, Circuit Judge, dissenting:

I dissent because Georgia's *res gestae* exception has been applied in an unconstitutional manner. The confrontation issue arises in this case because the jury was being invited, through hearsay statements, to believe that the driver of the abandoned car was Hosea Williams. Because these hearsay statements concerning the identity of the person who committed the crime lack adequate indicia of reliability, they should have been excluded. Circumstantial evidence obtained after Williams was identified as the possible driver, no matter how substantial, cannot provide the reliability required. A study of the purposes achieved by the right of confrontation leads to the conclusion that any indicia of reliability can only come from a testing of the circumstances which surround the making of the hearsay statements and from the statements themselves.

The Confrontation Clause reflects a preference for literal confrontation at trial. *Ohio v. Roberts,* 448 U.S. 56, 63, 100 S.Ct. 2531, 2537, 65 L.Ed.2d 597 (1980); *California v. Green,* 399 U.S. 149, 157, 90 S.Ct. 1930, 1934–35, 26 L.Ed.2d 489 (1970). The opportunity for personal examination and cross-examination of witnesses was designed to prevent convictions obtained solely upon the basis of depositions and *ex parte* affidavits. *Mattox v. United States,* 156 U.S. 237, 242–43, 15 S.Ct. 337, 339, 39 L.Ed. 409 (1895). The chance to confront a witness allowed not only for "testing the recollection and sifting the conscience of the witness" but also for "compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." *Id.* Confrontation, therefore, gives the accused and the jury the opportunity to gauge the truth and reliability of the witness' testimony; the accused by testing his recollection of events and the jury by assessing his demeanor. Through its examinations of when hearsay may be admitted without

running afoul of the Confrontation Clause, the Supreme Court has maintained this view as to the goal achieved by confrontation. As the Court noted in *California v. Green, supra,* confrontation insures that the witness will testify under oath, forces the witness to submit to cross-examination and makes it possible for the jury to observe the witness and thereby better able to assess credibility. 399 U.S. at 158, 90 S.Ct. at 1935, 26 L.Ed.2d at 497. The chances for discovery of truth are enhanced by testimony under oath, subject to cross-examination and given before a jury. If a witness testifies under oath, he is impressed with the seriousness of the matter at hand and made aware of the possible penalties for lying. *Id.* The capabilities of cross-examination and observation by the jury for eliciting truth are self-evident.[1] It is because these means of testing accuracy are so important that the lack of proper confrontation at trial "calls into question the ultimate 'integrity of the fact-finding process.'" *Chambers v. Mississippi,* 410 U.S. 284, 295, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297 (1973), *quoting Berger v. California,* 393 U.S. 314, 315, 89 S.Ct. 540, 541, 21 L.Ed.2d 508 (1969). Nevertheless, the state possesses competing interests, in effective law enforcement and the development of rules of evidence applicable to criminal proceedings, which may warrant dispensing with confrontation at trial. *Ohio v. Roberts, supra,* 448 U.S. at 64, 100 S.Ct. at 2538, 65 L.Ed.2d at 607. The Supreme Court has attempted to accommodate these competing interests regarding the admissibility of hearsay statements by requiring the state to show both necessity and reliability.

In *Dutton v. Evans,* the Court established four indicia of reliability "widely viewed as determinative of whether a statement may be placed before the jury though there is no confrontation of the declarant." 400 U.S. 74, 89, 91 S.Ct. 210, 220, 27 L.Ed.2d 213 (1970). In assessing the reliability of a hearsay statement, the Court

---

1. The Court in *California v. Green* stated that cross-examination was the best device invented for the discovery of truth. *399 U.S. at 158, 90 S.Ct. at 1935, 26 L.Ed.2d at 497.*

**1498**

considered: 1) whether the statement contained express assertions of past fact; 2) whether the declarant had personal knowledge of the identity and role of the participant in the crime; 3) whether it was possible that the declarant's statement was founded upon faulty recollection; and 4) whether the circumstances under which the statements were made provided reason to believe the declarant misrepresented the defendant's involvement in the crime. 400 U.S. at 88–89, 91 S.Ct. at 219, 27 L.Ed.2d at 226. These indicia of reliability serve as substitutes for the usual means of testing accuracy in a way that assessing the strength of the corroborating evidence against the accused cannot. Asking the *Dutton* questions allows for a consideration of the circumstances in which the statements were made and through that a testing of the knowledge and perception (2nd question), memory (3rd question) and motivation (4th question) of the witness. In addition, the content of the statement itself can be examined to see if it carries a warning to the jury about the weight it should carry (1st question).[2] *Dutton, supra*, 400 U.S. at 88, 91 S.Ct. at 219, 27 L.Ed.2d at 226.

If these questions are asked about the hearsay statements admitted against Williams, it appears that they lacked sufficient reliability to meet the constitutional standard. First, the hearsay statements in question were assertions of past fact. The statements cannot be considered as being contemporaneous with the accident, since the record makes it clear that none of the hearsay witnesses heard the statements about the driver of the abandoned car until ten to fifteen minutes after the accident. This single indication of unreliability is sufficient to reject the hearsay. The statements introduced in this case were state-

ments about the identity of the driver rather than an opinion as was the statement in *Dutton*.[3] These statements therefore failed to carry on their face a warning to the jury not to give them undue weight. 400 U.S. at 88, 91 S.Ct. at 219, 27 L.Ed.2d at 226.

Second, there was no evidence introduced about the declarant's personal knowledge of identity of the driver. The declarant did not say anything that would indicate how he knew the driver of the other car was Williams. None of the hearsay witnesses could testify as to whether the declarant actually witnessed the automobile accident, or if he did what sort of view he had or whether he merely heard that Williams was the driver. As the district court pointed out, testimony elicited upon cross-examination of one of the police officers at the scene indicated that the declarant might have overheard the police mentioning the defendant's name when they found his personal papers in the abandoned vehicle. Under these circumstances, cross-examination of the declarant might well have shown that the declarant was not in a position to know whether Williams was driving the car. *Dutton*, 400 U.S. at 88–89, 91 S.Ct. at 219, 27 L.Ed.2d at 226.

While it seems unlikely that the statements were based on faulty recollection since they were made shortly after the accident, the district court was correct in noting that the complete lack of opportunity for cross-examination made any testing of the declarant's mental state at the time of the statements impossible. Finally, there is nothing about the circumstances under which the statements were made to indicate that the declarant did not misrepresent Williams' involvement in the accident. Since no one saw the driver of the

---

**2.** According to the Court in *Dutton*, if the hearsay statement contains no assertions of past fact, then it carries on its face a warning to the jury not to give it undue weight. This is because the jury is just being invited to infer something rather than accept it as fact.

**3.** It is true that one hearsay witness testified that the driver "looked just like Hosea Williams" but the other two witnesses testified that the

driver was expressly identified as Williams. One of these overheard the declarant say that the driver was Williams. The final hearsay witness testified that while he and some others were helping the injured driver an unidentified black man came up and asked the injured man if he knew who had hit him. When the dazed victim said that he did not, the declarant said "Hosea Williams" after standing around two or three minutes and melted away into the crowd.

abandoned vehicle other than the hearsay declarant, it is not impossible that he was the driver of the car and wanted to shift suspicion to another before he left the scene. It is also possible that the declarant, without meaning to lie, simply passed on information that he heard in the crush of the thirty to forty observers at the accident scene. "[T]he mission of the Confrontation Clause is to advance a practical concern for the accuracy of the truth-determining process in criminal trials by assuring that the trier of fact [has] a satisfactory basis for evaluating the truth of the prior statement." *Dutton*, 400 U.S. at 89, 91 S.Ct. at 220, 27 L.Ed.2d at 227, *quoting California v. Green, supra*, 399 U.S. at 161, 90 S.Ct. at 1936, 26 L.Ed.2d at 498. That mission has not been met here since the jury was presented no evidentiary basis upon which to assess the declarant's knowledge, perception or motivation.

Under the circumstances of this case, the constitutional error cannot be considered harmless. The harmless error test as most recently stated by the Supreme Court is whether, absent the constitutional error, it is "clear beyond a reasonable doubt that the jury would have returned a verdict of guilty." *United States v. Hasting*, 461 U.S. 499, 103 S.Ct. 1974, 1981, 76 L.Ed.2d 96 (1983). Without the hearsay evidence, the state presented a strong circumstantial case against Williams. The physical evidence in the car, Williams' appearance at the time of arrest and the testimony which placed him leaving his nearby business shortly before the accident, point to Williams as the driver of the car. Williams, however, also put on a case of circumstantial evidence which supported his theory that the car had been stolen. As the district court points out, the most important factor concerning the hearsay statements is that they constituted the *sole* direct evidence placing Williams at the scene. Without this evidence, the trial would have turned on credibility determinations and the weighing of the circumstantial evidence. Since there is a doubt that the jury would have found Williams guilty without the identifying statements, the admission of the hearsay statements cannot be considered harmless. Having determined that the petitioner was denied his sixth amendment right to confrontation and that this error was not harmless, I would grant the writ of habeas corpus.