**John Edward PICKETT, Petitioner,**

v.

**Warden George BOWEN, et al.,
Respondents.**

Civ. A. No. 84–T–110–N.

United States District Court,
M.D. Alabama, N.D.

Oct. 16, 1985.

C. Winston Sheehan, Jr., Montgomery, Ala. (Appointed), for petitioner.

Charles A. Graddick, Atty. Gen., Martha Gail Ingram, Asst. Atty. Gen., Montgomery, Ala., for respondents.

## MEMORANDUM OPINION

MYRON H. THOMPSON, District Judge.

This cause is before the court on (1) the recommendation of the magistrate that John Edward Pickett's petition for a writ of habeas corpus should be granted and (2) the respondents' objections to the recommendation. For the reasons that follow, this court concludes that the objections should be overruled and the recommendation adopted.

## I.

Pickett was convicted in the Circuit Court of Montgomery County, Alabama for sexual abuse in the first degree. 1975 Alabama Code § 13A–6–66. He was sentenced to 16 years in prison. The alleged victim was a ten-year-old girl.

The witnesses called by the prosecution at trial were the ten-year-old girl, her mother, and the police officer who investigated the case. The evidence indicated that Pickett was an employer and social acquaintance of the girl's mother. On the morning of August 24, 1981, Pickett offered to take the girl for something to eat. When they arrived at Pickett's apartment, he allegedly took the girl into his bedroom, asked her if she could keep a secret, and then put his finger inside her vagina. The girl testified that she began to cry, asked him to stop, and stated that she wanted to go home.

Once at home, the girl reported the incident to her mother, who called the police. An officer from the Youth Aid Division of the Montgomery Police Department investigated the complaint and took the girl to Jackson Hospital emergency room, where she was examined by a physician and released.

On cross-examination at trial the girl testified that she did not want her mother to marry Pickett. She also admitted that she had previously made a false accusation of sexual abuse against Pickett's stepson.

At the close of its case, the prosecution introduced, over the strenuous objections of Pickett, a hospital emergency room report that had been prepared by the doctor who examined the girl. The report contained the following findings:

CAUSE OF ACCIDENT OR ILLNESS. Sexual Abuse

### XXX

HISTORY AND PHYSICAL. Hymen broken—smooth edges, no evidence of recent trauma to hymen. Erythema on lateral aspect of vaginal wall bilaterally. DIAGNOSIS. Recent vaginal trauma.[1]

The prosecutor had informed Pickett before trial that he would not call the examining physician. Pickett attempted to subpoena the doctor listed on the report, but the subpoena was returned "not found" one day before trial. Pickett then discovered that the doctor was temporarily out of the state at a medical convention in Mexico. On the date of trial, he requested a continuance so that he could subpoena the examining physician. This request was denied by the trial court.

The state prosecutor argued that the report was admissible under a specialized business record exception to the hearsay rule, see 1975 Alabama Code §§ 12–21–5 to 12–21–7, 12–21–43, which allows the admission of certified copies of hospital records when they are kept in the regular course of the hospital's business. The prosecutor made no effort to demonstrate that the doctor who examined the victim was unavailable to testify at trial.

Pickett objected to admission of the medical report on the grounds that it contained inadmissible hearsay and that it denied him his sixth amendment right under the U.S. Constitution to confront and cross-examine the witnesses against him. This objection was overruled, and the report was published to the jury. At that point, the prosecution rested.

Pickett's defense consisted of an alibi witness, his sister, who testified that she was in her brother's apartment when the ten-year-old girl was there and that nothing unusual happened. In addition, Pickett called two of the girl's fourth grade teachers, who testified that she was sometimes untruthful and made up stories. They both added that, absent concrete medical evidence that the girl had been sexually abused, they would not be inclined to take action if she reported such an incident to them. Picket was convicted.

---

1. An entry that read "possible sexual abuse by friend" was deleted from the report as published to the jury.

On appeal, the Alabama Court of Criminal Appeals held that the trial court did not abuse its discretion in denying Pickett's request for a continuance and that admission of the medical report did not violate the rule against hearsay or deny Pickett his right to confront the witnesses against him. *Pickett v. State*, 456 So.2d 330 (Ala. Crim.App.), *cert. denied*, 456 So.2d 330 (Ala.1983). In considering Pickett's confrontation claim, the court placed particular emphasis on the "high degree of reliability" of the medical report. *Id.* at 336.

Pickett then filed a petition for a writ of habeas corpus in this court pursuant to 28 U.S.C.A. § 2254, and the petition was referred to a magistrate. Pickett requested an evidentiary hearing, arguing that a fact material to his constitutional claim—the reliability of the medical report—was inadequately developed at the state court level. He supported this request with the claim that the medical report was contradictory on its face and that the doctor who actually wrote the report was not the doctor previously thought to have written it. The respondents countered that the state trial court's finding that the report was not contradictory on its face was entitled to a "presumption of correctness" under *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981), and that Pickett's claim to the extent it is based on newly discovered evidence that another physician had examined the girl should first be exhausted and addressed in state court pursuant to 28 U.S.C.A. § 2254(b).

The magistrate granted Pickett's request for an evidentiary hearing. At the hearing the physician who actually examined the girl indicated that the trauma to the girl's vagina might have occurred after she was with Pickett; that it was caused by three to five minutes of manipulation; that the mere insertion of an index finger was unlikely to have caused the redness that he had observed; and that it was possible that the child had caused the trauma by manipulating her vagina herself.

## II.

Pickett claims before this court that the admission of the medical report violated his right under the sixth amendment to the U.S. Constitution to confront and cross-examine witnesses against him in a criminal proceeding. His claim has merit.

The confrontation clause of the sixth amendment provides that a defendant in a criminal case has the right "to be confronted with the witnesses against him." This right is "a fundamental right ... made obligatory on the States by the Fourteenth Amendment." *Pointer v. Texas*, 380 U.S. 400, 403, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965).

The Supreme Court last addressed the relationship between the confrontation clause and the admission of hearsay evidence in *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). There, the Court noted that the clause reflects a preference for face-to-face confrontation and cross-examination at trial, the absence of which " 'calls into question the ultimate "integrity of the fact-finding process." ' *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297 (1973), *quoting Berger v. California*, 393 U.S. 314, 315, 89 S.Ct. 540, 541, 21 L.Ed.2d 508 (1969)." *Roberts*, 448 U.S. at 63–64, 100 S.Ct. at 2537–38. The Court observed that the confrontation clause envisions

"a personal examination and cross-examination of the witness, in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." *Mattox v. United States*, 156 U.S. [237,] 242–243, 15 S.Ct. [337,] 339 [39 L.Ed. 409 (1895)].

*Roberts*, 448 U.S. at 63–64, 100 S.Ct. at 2537–38.

The Court recognized, however, that competing state interests in effective law enforcement and the formulation of rules

of evidence applicable in criminal proceedings, "if 'closely examined,' *Chambers v. Mississippi,* 410 U.S. at 295, 93 S.Ct. at 1045, may warrant dispensing with confrontation at trial." *Roberts,* 448 U.S. at 64, 100 S.Ct. at 2538. The Court then articulated a general approach that, while not intended to " 'map out a theory of the Confrontation Clause that would determine the validity of all ... hearsay "exceptions," ' *California v. Green,* 399 U.S. [149,] 162, 90 S.Ct. [1930,] 1937 [26 L.Ed.2d 489 (1970)]," *Roberts,* 448 U.S. at 64–65, 100 S.Ct. at 2538, would nonetheless provide a framework for accommodating the competing interests implicated in such exceptions. *Id.*

The Supreme Court stressed in *Roberts* that the confrontation clause "operates in two separate ways to restrict the range of admissible hearsay." *Id.* at 65, 100 S.Ct. at 2538. The first restriction is that in the "usual case" the prosecution bears the burden of either producing or establishing the unavailability of the declarant whose statement it wishes to use against the defendant. *Id.* Unavailability of a witness is not established unless the prosecution has made "good-faith efforts ... prior to trial to locate and present the witness." *Id.* at 74, 100 S.Ct. at 2543. The second restriction is that, once a witness has been shown to be unavailable, the hearsay evidence may be admitted only if it is "marked with such trustworthiness that 'there is no material departure from the reason of the general rule,' " *id.* at 65, 100 S.Ct. at 2539, *quoting Snyder v. Massachusetts,* 291 U.S. 97, 107, 54 S.Ct. 330, 333, 78 L.Ed. 674 (1934); or, in other words, the hearsay must bear adequate "indicia of reliability." *Roberts,* 448 U.S. at 65, 100 S.Ct. at 2539, *quoting Mancusi v. Stubbs,* 408 U.S. 204, 213, 92 S.Ct. 2308, 2313, 33 L.Ed.2d 293 (1972). *See also Williams v. Melton,* 733 F.2d 1492, 1496 (11th Cir.1984), *cert denied,* —— U.S. ——, 105 S.Ct. 567, 83 L.Ed.2d 508 (1984).

■ Here, the record reflects that the prosecution failed to shoulder its threshold burden of establishing unavailability. At worst, the prosecutor knew that the true examining physician was actually available, and chose not to produce him at trial for tactical reasons. At best, he mistakenly thought that the examining physician was at a medical convention in Mexico. Under either reading of the facts, however, the prosecution failed to demonstrate that the witness was unavailable despite good-faith efforts undertaken prior to trial to locate and present the witness.

■ This conclusion does not end the analysis, however. *Roberts* recognized that a threshold showing of unavailability is not compelled in all instances by the confrontation clause. *Roberts,* 448 U.S. at 65 n. 7, 100 S.Ct. at 2538 n. 7. In some instances, the confrontation clause permits the admission of hearsay even when the witness is available. For example, a showing of unavailability of a witness is not required where the hearsay evidence is "peripheral" and not "crucial" or "devastating" and, in addition, the record reflects that the evidence is adequately reliable and there is no evidence of prosecutorial misconduct or negligence. *Dutton v. Evans,* 400 U.S. 74, 87–89, 91 S.Ct. 210, 219–20, 27 L.Ed.2d 213 (1970) (Stewart, J., plurality opinion); 4 J.B. Weinstein and M.A. Berger, *Weinstein's Evidence,* ¶ 800[04] at p. 800–30 (1985). Another example is where "the utility of trial confrontation [is] remote," *Roberts,* 448 U.S. at 65 n. 7, 100 S.Ct. at 2538 n. 7, that is, where the witness's "production would be unduly inconvenient and of small utility to a defendant." *Dutton,* 400 U.S. at 96, 91 S.Ct. at 223 (Harlan, J., concurring). Depending on the circumstances, hearsay exceptions often fall in this category. *Id.*

Here, the hearsay medical report was far from "peripheral", and the production of the doctor who examined the alleged victim and made the report was far from "of small utility" to the defendant. Indeed, the report was "crucial" to the prosecution, and the absence of the doctor at trial was "devastating" to Pickett. Failure to produce the physician denied Pickett the opportunity to inquire whether the doctor

was specifically qualified to render the opinion he did, to have the doctor explain what he meant in the report by "recent" and "trauma," and to have the doctor explain the significance of the "HISTORY AND PHYSICAL" notations in the report. The opinions and conclusions in the report were admitted "without a detailed explication of either the facts or reasoning processes on which they are based." *Phillips v. Neil,* 452 F.2d 337, 347 (6th Cir.1971), *cert. denied,* 409 U.S. 884, 93 S.Ct. 96, 34 L.Ed.2d 141 (1972).

But most importantly, Pickett was denied an opportunity to compare for discrepancies the alleged victim's testimony with the doctor's understanding of the nature and extent of the alleged sexual contact as evidenced from what he observed. That opportunity was essential in view of the fact that the report was the only concrete medical evidence introduced that could be viewed as establishing a key element of the crime—sexual contact; that the only other evidence of sexual contact came from the alleged victim herself, who had fabricated a similar charge against Pickett's stepson and who admitted that she did not want Pickett to marry her mother; and that two of the alleged victim's teachers indicated they would not believe that she was in fact sexually abused unless there was solid medical evidence supporting her accusation.[2] In addition, there is no evidence that it would have been unduly burdensome for the prosecution to locate and produce the attending physician. Indeed, the prosecution's own argument in briefs before this court conceded this point since they argue that a "simple phone call" would have es-

tablished the identity of the attending physician.[3]

Accordingly, the failure of the prosecution either to produce the physician who examined the alleged victim and made the medical report or to demonstrate his unavailability violated Pickett's constitutional right to confront his accuser. *See, e.g., United States v. McClintock,* 748 F.2d 1278, 1290–1292 (9th Cir.1984) (admission of evidence under business record exception without showing predicate of unavailability violated confrontation clause where report established essential element of offense charged, evidence admitted was both crucial to the prosecution and devastating to the defendant, and techniques used to arrive at expert's conclusion in report could vary); *United States v. Ordonez,* 737 F.2d 793, 802 (9th Cir.1984) (admission of hearsay evidence under business record exception without showing predicate of unavailability violated confrontation clause where government made no effort to locate witness and in fact did not know his identity); *United States v. Washington,* 688 F.2d 953, 959 (5th Cir.1982) (admission of hearsay evidence under business record exception without predicate showings of unavailability violated confrontation clause where at least some of the information contained in the report was crucial to government's case); *Lowery v. State,* 55 Ala.App. 514, 317 So.2d 365, 371, *cert. denied,* 294 Ala. 763, 317 So.2d 372 (1975) (admission of certified copy of death certificate under hospital records exception as sole evidence of cause of death in murder case violated confrontation clause where evidence related to key element of the offense and live witnesses were available to testify).

---

**2.** For the reasons stated above, the prosecution's failure to produce the doctor who examined the girl and made the medical report was not harmless error.

**3.** The respondents argue that Pickett had ample time to locate the attending physician and that his failure to do so should not be charged against the prosecution. This argument misapprehends where the burden to produce the wit-

ness lay. It was the prosecutor's responsibility to produce the examining physician, not Pickett's. *Roberts,* 448 U.S. at 74–75, 100 S.Ct. at 2543; *see also United States v. Massa,* 740 F.2d 629, 640 n. 6 (8th Cir.1984), *cert. denied,* — U.S. ——, 105 S.Ct. 2357, 86 L.Ed.2d 258 (1985) (even when out-of-court declarant is available to both sides, *Roberts* places burden on government to produce the witness whose out-of-court statements are to be used against the defendant).

### III.

The respondents' additional arguments are also without merit.

 The respondents contend that the discovery of the doctor who actually wrote the report and his testimony at the magistrate's hearing constitutes new evidence that should be first addressed in state court. The decision reached today is not based in any way on any subsequently discovered evidence presented by Pickett. The critical fact relied on by this court is that the prosecution failed to make any effort to call the physician who wrote the report, regardless of his identity. Since today's decision is unrelated to any additional evidence advanced by Pickett, the respondents' contention is meritless.

The respondents also argue that the magistrate erred in granting an evidentiary hearing based on the medical report's allegedly contradictory nature since the state court had already determined as a factual matter that the report was not contradictory. They argue that holding the hearing in such a situation violated the rule in *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981), that state court findings are entitled to a presumption of correctness in habeas corpus proceedings. Since any evidence adduced at that hearing relative to whether the report was or was not contradictory is not relied on by today's decision, the state court's factual finding remains unaffected.

An appropriate judgment will be entered.

### JUDGMENT

MYRON H. THOMPSON, District Judge.

In accordance with the memorandum opinion entered this date, it is the ORDER, JUDGMENT, and DECREE of the court that:

(1) The respondents' objections to the recommendation of the magistrate are overruled;

(2) The recommendation of the magistrate is adopted;

(3) Petitioner John Edward Pickett's petition for a writ of habeas corpus is conditionally granted in that the respondents shall release petitioner Pickett unless they grant him a new trial within sixty days from the date of this order; and

(4) Costs are taxed against respondents for which execution may issue.