**UNITED STATES of America,**
**Appellee,**

**v.**

**Armand MATALON, Appellant.**

**No. 515, Docket 34388.**

United States Court of Appeals, Second Circuit.

Argued Feb. 5, 1970.

Decided April 7, 1970.

John J. Kelleher, Paul B. Galvani, Asst. U. S. Atty., Robert M. Morgenthau, U. S. Atty., for appellee.

Phylis Skloot Bamberger, Milton Adler, New York City, for appellant.

Before WATERMAN and ANDERSON, Circuit Judges, and BARTELS, District Judge.*

WATERMAN, Circuit Judge:

Appellant appeals from a judgment of conviction in the United States District Court for the Southern District of New York, before Judge Wyatt and a jury, for having violated, and for having conspired to violate, 18 U.S.C. § 545. Count one of the two count indictment charged a conspiracy unlawfully to receive, conceal, sell and transport illegally imported merchandise, knowing it to have been illegally imported. Count two charged the unlawful receipt, concealment, sale and transportation of 200 one-ounce bottles of illegally imported Arpege perfume, knowing of its illegal

* Of the Eastern District of New York, sitting by designation.

importation.[1] On this appeal appellant's only challenge is to the constitutionality of the portion of the statute that authorizes conviction upon proof of defendant's possession of illegally imported goods, unless such possession "is explained to the satisfaction of the jury."[2] The thrust of appellant's attack at argument, relying on Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970) and Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969) is that the connection between the fact of one's possession of illegally imported merchandise and the fact to be inferred therefrom, that the possessor had knowledge of illegal importation, is irrational and hence violates the due process clause of the Fifth Amendment.

Unlike similar language found in 21 U.S.C § 174, authorizing conviction for possessing imported heroin once a defendant is shown to have had unexplained possession of heroin, 18 U.S.C. § 545 requires the Government to prove that the goods found in the defendant's possession were illegally imported before the defendant's knowledge of the illegal importation of them may be inferred. Although the § 174 presumptions as applied to possession of heroin were recently upheld, Turner v. United States, 90 S.Ct. at 646–653, they were held invalid when applied to possession of cocaine (at least in relatively small amounts), id. at 654 and n. 39, as were the similar 21 U.S.C. § 176a presumptions applicable to possession of marijuana, Leary v. United States, *supra*.

The test to be applied when judging the constitutionality of a statutory presumption has undergone extensive examination in *Turner* and former Supreme Court cases. In Tot v. United States, 319 U.S. 463, 467–468, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943), the Court stated:

> Under our decisions, a statutory presumption cannot be sustained if there be no rational connection between the fact proved and the ultimate fact presumed, if the inference of the one from proof of the other is arbitrary because of lack of connection between the two in common experience. This is not to say that a valid presumption may not be created upon a view of relation broader than that a jury might take in a specific case. But where the inference is so strained as not to have a reasonable relation to the circumstances of life as we know them it is not competent for the legislature to create it as a rule governing the procedure of courts.

Subsequent to *Tot*, the Court considered two statutory presumptions dealing with illegal stills. In United States v. Gainey, 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed. 2d 658 (1965) it was held that the defendant's unexplained presence at an illegal still authorized the jury to infer that he was "carrying-on" the business of a distiller, but in United States v. Romano, 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965) it was held that the jury was not authorized to infer from the defendant's unexplained presence at an illegal still that he had possession, custody or control of the still. In Leary

---

1. Appellant and two codefendants were charged in both counts under the portion of 18 U.S.C. § 545 which reads:

   Smuggling goods into the United States
   * * * * *
   Whoever fraudulently or knowingly * * * receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such [smuggled] merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law * * * [commits a crime].

   Codefendant Oscar Zavala was convicted on both counts, but the propriety of his conviction is not involved in this appeal. Codefendant Carmen Zavala was acquitted by the jury on both counts.

2. This portion of the statute provides:
   Proof of defendant's possession of such [smuggled] goods, unless explained to the satisfaction of the jury, shall be deemed evidence sufficient to authorize conviction for violation of this section.

v. United States, *supra* 395 U.S. at 36, 89 S.Ct. at 1548, the Court further instructed:

> The upshot of *Tot, Gainey,* and *Romano* is, we think, that a criminal statutory presumption must be regarded as "irrational" or "arbitrary," and hence unconstitutional, unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend.

Nevertheless, the "controlling" test is not clear for although the *Leary* Court found it "irrational" to presume that one possessing marijuana knew it had been illegally imported, the Court added a caveat by saying the Court did not need to decide whether a criminal presumption which "passes muster" when judged by the "more likely than not" standard must also satisfy the criminal "reasonable doubt" standard. *Id.* at 36, n. 64, 89 S.Ct. 1532, reaffirmed in Turner v. United States, 90 S.Ct. at 646. The Court was again able to skirt this issue when it ruled in *Turner, supra* at 652, that the presumption permitting the jury to infer that heroin possessed in this country is illegally imported is valid, "[w]hether judged by the more likely than not standard applied in Leary v. United States, *supra,* or by the more exacting reasonable-doubt standard normally applicable in criminal cases, * * *." Turning to the presumption of knowledge, the *Turner* Court decided that due to the fact that "little if any heroin is made in the United States" a defendant found in possession of heroin would be "aware of the 'high probability' that the heroin in his possession had originated in a foreign country." *Id.* at 652.[3]

The development of different rules relative to the probative effect of unexplained possession of heroin and unexplained possession of perfume which is proved at trial to have been smuggled perfume arises from the fact, accepted as an undisputable one, that the great bulk of foreign-produced perfume finds its way into this country lawfully, while all importation of heroin is unlawful. Obviously a smuggler of Arpege perfume would know he had smuggled it; also one who knew he was dealing in smuggled perfume would know it had been illegally imported. However, after those involved with the entry or the initial circulation of smuggled perfume have disposed of the merchandise and the perfume has become goods in lawful commerce, there would no longer seem to be a "high probability" that one in possession of such perfume would know that it was some of the relatively small amount that is smuggled.

If the permissible inference authorized by 18 U.S.C. § 545 can be upheld it must find support in the common law, for we need not "weigh heavily" the congressional determination when the inference permitted, as here, is within "specialized judicial competence." Leary v. United States, *supra* at 35–36, 89 S.Ct. 1532. The inference authorized by statute with respect to smuggled goods is closely akin to the common-law rule which allows the jury, once a defendant is shown to have possession of *recently* stolen property, to infer that he knew the property to have been stolen. E.g., United States v. Minieri, 303 F.2d 550, 554 (2 Cir. 1962). This rule, long recognized in the common law, is not, however, directly applicable to a consideration of the statutorily created inference involved in the present case. Section 545 allows the jury to infer knowledge of illegal importation irrespective of the length of time elapsing between the date the goods illegally entered this country

---

3.  The Court in *Turner, supra* at 652, n. 29, and in *Leary, supra* 395 U.S. at 46, n. 93, 89 S.Ct. 1532, adopted the American Law Institute's Model Penal Code § 2.02(7) (proposed official draft (1962) definition of "knowledge":

> When knowledge of a particular fact is an element of an offense, such knowledge is established if a person is aware of a high probability of its existence, unless he actually believes that it does not exist.

and the date the goods were found in the defendant's possession. Cf. United States v. O'Brien, 255 F.Supp. 755, 766 (D.C.1965), aff'd, 365 F.2d 601, 605–606 (6 Cir. 1966), judgment vacated, 386 U. S. 345, 87 S.Ct. 1158, 18 L.Ed.2d 94 (1967). Absent the additional showing of "recent" illegal importation, we cannot say "with substantial assurance" that one found in possession of smuggled goods which are not of the kind of goods where importation is absolutely forbidden, as heroin, is "more likely than not" to be aware of a "high probability" that the goods had at one time been smuggled. Cf. Leary v. United States, *supra* at 45–53, 89 S.Ct. 1532.

In the present case, however, the government proof substantiated beyond a reasonable doubt that the perfume the appellant, then a seaman on the *S.S. United States*, sought to sell to an undercover Bureau of Customs agent, one Weinstein, had been recently smuggled, and that the appellant actually knew of his own personal knowledge that the perfume had been illegally imported. Appellant represented to Weinstein, who told Matalon that he wished to purchase some perfume, that he could get as much Arpege perfume as Weinstein wanted, that it was of good quality, that it came from overseas, and that he had no problem bringing the perfume into the United States. Several attempts to fill Weinstein's order failed for one reason or another, but after appellant saw that Weinstein actually had the cash to effect a purchase he called Oscar Zavala, a fellow crew member who he knew had taken ashore a large number of Arpege bottles from their ship. As a result of this call a price of $10 a bottle for 200 bottles was arrived at. Zavala and appellant each presented a carton of bottles to Weinstein, and then, at a pre-arranged signal, Matalon and Zavala were arrested. The Government also proved that there were no properly executed customs declarations and no matching "release slips" for the quantities of bottles Zavala and Matalon had planned to sell to Weinstein. Zavala took the stand and

denied illegally importing the perfume. Matalon did not take the stand and the testimony of the undercover agent and of the arresting officer was in no way rebutted by him.

The court charged the jury that in order to convict either of the defendants on the substantive count

"* * * the Government must prove beyond a reasonable doubt the following four essential elements:

"First, that the merchandise was brought into the United States contrary to law;

"Second, that the defendant received or concealed or bought or sold or in some manner facilitated the transportation, concealment, or sale of such merchandise.

\* \* \* \* \* \*

"And the third essential element, that the defendant acted fraudulently or knowingly.

"The fourth essential element, that the defendant knew that the merchandise had been brought into the United States contrary to law.

You have just noticed that the fourth essential element of the offense under Section 545 is that the defendant know that the merchandise had been brought into the United States contrary to law. If you find that the merchandise here was, in fact, brought into the United States unlawfully, and if you find that any defendant thereafter had possession of that merchandise, such possession is itself sufficient evidence to authorize conviction of that defendant, unless the evidence in the case provides an explanation of the possession to the satisfaction of the jury.

"The explanation of possession can come from any evidence in the case, and the total evidence, the total evidence should be considered in this respect. Thus, if the jury should find beyond a reasonable doubt that the merchandise was brought into the United States unlawfully and

that any defendant thereafter had possession of it, the fact of such possession alone, unless explained to the satisfaction of the jury by the evidence in the case, permits, but does not compel an inference by the jury that the defendant having possession had knowledge that the merchandise was brought into the United States contrary to law."

No exceptions were taken by trial counsel to this exposition of the Government's burden of proof even though the trial took place in late October 1967, months after Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), the case relied upon in the able appellate brief of the Legal Aid Society as substantiating the claim made on appeal that the portion of the statute set forth in footnote 2 *supra* is violative of the Fifth Amendment. In view of the Government's overwhelming evidence that Matalon knew the Arpege was smuggled Arpege, the escape hatch of Fed.R.Crim.P. 52(b) is not available to remedy the trial omission.

With the modifications and additions necessary to instruct relative to the conspiracy count the court's instructions with reference thereto were in a similar vein. And the jury was warned that the failure of Matalon to testify cannot create any presumption that may be used against him and that the law permits but does not require a defendant to testify in his own behalf.

The Government's case was so conclusive that the jury, quite apart from any reliance upon the Section 545 statutory permissible inference, could find the appellant guilty beyond a reasonable doubt of the crimes charged. Hence we find no difficulty in affirming the judgment of conviction entered upon the jurors' verdict.[4]

Appellant had briefed the broad constitutional argument that 18 U.S.C. § 545 violated his Fifth Amendment right against self-incrimination because of the provision that permits an accused's conviction on proof of possession of illegally imported merchandise unless that possession is explained satisfactorily—an explanation, appellant claimed, that would have to be made by the accused. Before the case was argued this broad constitutional issue was disposed of adverse to appellant in Turner v. United States, *supra,* handed down on January 20, 1970, and, as stated earlier in this opinion, appellant, at argument, claimed prejudicial irrationality of any application of the presumption to him.

In the case of a prosecution for possessing stolen goods, knowing the goods to have been stolen, if the defendant is shown to have had possession of the goods and to know that a co-worker stole them the possession is sufficient to authorize a conviction unless by accepting the burden of going forward with the evidence the defendant puts in evidence to rebut the prosecution's proof.

It might be otherwise if the government proof that the Arpege had been smuggled had not also so closely linked Matalon with Zavala as to create the rational inference that Matalon knew that the Arpege was smuggled Arpege and, in company with Zavala, intended to profit by its illegal sale to Weinstein; but on the proven facts of this case we find no merit in an attack upon the conviction based upon a claim that Matalon is the victim of an irrational inference.

The judgment of conviction is affirmed.

4. Reference may be had to two earlier cases in this circuit in which, as here, the claim was advanced that the statutory presumption is unconstitutional and where the convictions were affirmed, as here, on the basis of strong convincing government evidence of the appellant's guilt. Friedman v. United States, 276 Fed. 792 (2 Cir. 1921); United States v. Goldstein, 323 F.2d 753 (2 Cir. 1963).