Tommie Lee GERMANY,
Petitioner-Appellant,

v.

W. J. ESTELLE, Director, Texas
Department of Corrections,
Respondent-Appellee.

No. 79–3351.

United States Court of Appeals,
Fifth Circuit.

March 19, 1981.

**1302**

Harlan P. Cohen, Barbara J. Houser, Dallas, Tex., Court-appointed, for petitioner-appellant.

Mark White, Atty. Gen., John W. Fainter, Jr., Ted L. Hartley, Executive Asst. Attys. Gen., Douglas Becker, W. Barton Boling, Asst. Attys. Gen., Austin, Tex., for respondent-appellee.

Before TJOFLAT, POLITZ and HATCHETT, Circuit Judges.

TJOFLAT, Circuit Judge:

Tommie Lee Germany has filed this appeal from the district court's denial of his motion for habeas corpus relief under 28 U.S.C. § 2254 (1976). Germany's petition is based upon alleged violation of his sixth amendment right to compulsory process for witnesses in his favor, and upon denial of his rights as elucidated by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We affirm the decision of the district court.

**I**

On the evening of March 15, 1972, Joyce Marie Miller and her aunts, Billie Jean Johnson and Earnadean Miller, drove to the Good Luck Drive-In restaurant to purchase some chicken. While Joyce Miller was purchasing the food, Billie Joe Green drove up and parked beside Miller's car. He was acquainted with Joyce Miller and her aunts, and began conversing with the aunts from his car. As Green and the aunts were speaking, Tommie Lee Germany, who was romantically involved with Joyce Miller, drove into the restaurant parking lot. Germany got out of his car brandishing a pistol, began cursing and, as Joyce Miller was returning to her car, fired his gun toward the ground. He approached Ms. Miller and brought her to his car. He then went to Green's car, announcing on the way that he was going to kill him. Germany opened the door to Green's car and began kicking him. As Green straightened up from the blows, Germany fired his pistol at him. Germany

then returned to his car and left the restaurant with Joyce Miller. The police officers who arrived at the Good Luck Drive-In shortly thereafter found Billie Joe Green dead.

Later that night Texas Ranger Roy E. Scott spotted Germany's car and stopped it after a fourteen-mile high-speed chase. Scott thereupon arrested Germany. Sometime after Germany was placed in custody, he had an interchange with Scott and stated that "he had shot a dude that had been messing with his gal." Subsequently, Germany was indicted for murder; this statement was admitted into evidence against Germany in the state trial arising from his arrest, and the state adverted to it in its closing argument.

A Texas jury convicted Tommie Lee Germany of murder with malice aforethought and he was sentenced to life imprisonment. That conviction was affirmed on appeal. After exhausting his state remedies, Germany petitioned the federal district court for a writ of habeas corpus, alleging that the admission of his incriminating statement was a violation of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and that at his trial he had been denied his sixth amendment right to compulsory process for witnesses in his favor. *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). *See also Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). The district court denied the writ, and this appeal followed.

**II**

**A.**

Petitioner first contends that the admission of his self-incriminating statement at trial violated his *Miranda* rights. *Miranda* precludes prosecutorial use of an accused's incriminating statements as substantive evidence against him unless the state has carried the burden of demonstrating "the use of [pre-interrogation] procedural safeguards effective to secure the

privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. at 444, 86 S.Ct. at 1612. Here, Germany made his statement in response to police inquiries while he was in custody, and it was introduced against him at trial during the state's case-in-chief. Moreover, it is uncontested that the state failed to carry its burden of demonstrating compliance with *Miranda*. It therefore appears that Germany's *Miranda* rights were violated. *See Harryman v. Estelle*, 616 F.2d 870, 873 (5th Cir. 1980).

A violation of *Miranda*, however, does not necessarily mandate the provision of habeas corpus relief. Such an error may, under the doctrine of *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), constitute harmless error. *See United States v. Stewart*, 576 F.2d 50, 55 (5th Cir. 1978); *United States v. Savell*, 546 F.2d 43, 46 (5th Cir. 1977); *Null v. Wainwright*, 508 F.2d 340, 343 (5th Cir.), *cert. denied*, 421 U.S. 970, 95 S.Ct. 1964, 44 L.Ed.2d 459 (1975). In *Fahy v. Connecticut*, 375 U.S. 85, 86–87, 84 S.Ct. 229, 230–231, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963), the Supreme Court held that error is harmful when, viewed in the context of all the facts adduced at trial and in light of the effect the inadmissible evidence had upon the conduct of the defense and the presentation of evidence, there is "a reasonable possibility that the evidence complained of might have contributed to the conviction." In *Chapman*, the Court held that it is incumbent on the state to show harmlessness pursuant to this standard through proof beyond a reasonable doubt. 386 U.S. at 24, 87 S.Ct. at 828 (1967).

█ Following this Supreme Court mandate, we have held that, after reviewing the facts of a case, the evidence adduced at trial, and the impact the constitutional violation had on the trial process, "[a] court must then decide whether, absent the so-determined unconstitutional effect, the evidence remains not only sufficient to support the verdict but so overwhelming as to establish the guilt of the accused beyond a reasonable doubt." *Harryman*, 616 F.2d at 876. Applying this test to Germany's case, we find that the *Miranda* error was indeed harmless.

At trial, the only exculpatory evidence Germany offered was his assertion that he was either acting in self-defense or that he had accidentally hit Green when he fired his gun toward the ground. The incriminating statement in question does not contradict either of petitioner's defenses; indeed, there was little dispute that Germany had shot Green, whatever the circumstances. Furthermore, Germany's explanations were refuted without regard to the incriminating statement. Autopsy evidence showed that the bullet fired into Green entered at a level trajectory, casting doubt on Germany's assertion that he had aimed his gun mistakenly, and there was no evidence of self-defense other than Germany's impeached testimony. Moreover, the weakness of these defenses is highlighted further not by the incriminating statement, but by three eyewitness accounts which clearly refute the validity of Germany's contentions. At trial these three eyewitnesses, Joyce Miller, Earnadean Miller, and Billie Jean Johnson, testified that Germany purposefully shot Green. Their testimony implicated Germany beyond all doubt.

The harmless error standard is a strict constitutional test. Nevertheless, when faced with the overwhelming untainted evidence of guilt presented in this case, and the peripheral impact of the incriminating statement on the strength of petitioner's asserted defenses, we must hold that the admission of the statement in question was harmless beyond a reasonable doubt.

### B.

Petitioner's second contention is that the trial court denied him his sixth amendment right to compulsory process for witnesses in his favor. This contention arises from the following circumstances. At trial, petitioner sought to exclude the testimony of Joyce Miller by invoking the Texas marital privilege. Petitioner asserted that Miller was his common-law wife and that Texas law rendered her testimony against him incompetent. The parties agree that Texas pro-

cedure allows a party asserting the marital privilege to present evidence to the jury concerning the existence of the marital relation. The briefs of the parties and the record in the state court indicate that this procedure is analogous to that used to determine the voluntariness of a confession. An individual first broaches the issue of marital privilege with the court. Upon an adverse ruling, the party is allowed to submit the same issue to the jury. He is then entitled to a jury instruction at the conclusion of the trial to the effect that if the jury determines that a marital relationship did exist between a witness and a party, the jury is to disregard that witness' testimony.

After the petitioner presented the testimony of a number of witnesses regarding the purported common-law marriage, the Texas trial judge stated:

> I don't see any point in going into this question of common-law marriage with these witnesses. The Court is going to hold that there was no common-law marriage and you are just prolonging the case with that. Now, if you want to go into anything else, okay, but I have heard all I want to hear on this question of common-law marriage.

State Trial Transcript at 327–28.

Following this statement, petitioner did not object, nor did he make a proffer of further witnesses he wished to call to establish a common-law marriage issue. *See id.* In his state habeas proceedings, however, petitioner contended that the trial judge had denied him the opportunity to call Carl Fletcher as an additional witness. According to petitioner, Fletcher was present and willing to testify, and would have supported petitioner's claim of common-law marriage. The state habeas court held an evidentiary hearing on the matter and specifically found as a fact that:

> The Court knows of its own knowledge that Mr. Fletcher never has been presented as a witness before the Court and permission was never denied for Mr. Fletcher to testify.

*Findings Of Fact And Conclusions Of Law* at 22, Ex Parte *Tommy* [sic] *Lee Germany,*

Writ No. 240–L, January 21, 1975. *See also* Brief for Appellee at 28, *Germany v. Estelle.*

When Germany renewed his claim of denial of compulsory process in his federal habeas petition, the district court dismissed the claim on the basis of 28 U.S.C. § 2254(d) (1976). That statute reads:

> In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—
>
> (1) that the merits of the factual dispute were not resolved in the State court hearing;
>
> (2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;
>
> (3) that the material facts were not adequately developed at the State court hearing;
>
> (4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;
>
> (5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;
>
> (6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or
>
> (7) that the applicant was otherwise denied due process of law in the State court proceeding;
>
> (8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was

made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record:

And in an evidentiary hearing in the proceeding in the Federal court, when due proof of such factual determination has been made, unless the existence of one or more of the circumstances respectively set forth in paragraphs numbered (1) to (7), inclusive, is shown by the applicant, otherwise appears, or is admitted by the respondent, or unless the court concludes pursuant to the provisions of paragraph numbered (8) that the record in the State court proceeding, considered as a whole, does not fairly support such factual determination, the burden shall rest upon the applicant to establish by convincing evidence that the factual determination by the State court was erroneous.

In applying this statute, the district court determined that the findings of the state court clearly indicated that the trial judge never denied Germany the right to call Fletcher as a witness, and that this finding of fact must be "presumed to be correct" under 2254(d). Given this finding, the district court felt obligated to dismiss petitioner's compulsory process claim. Record, vol. 1 at 74–75.

■ We refuse to overturn this district court determination. In *Sumner v. Mata*, —— U.S. ——, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981), the Supreme Court made the importance of 2254(d) abundantly clear. Section 2254(d) was enacted to lessen the strains on our federalist system imposed by the habeas corpus power of the federal courts. As such, its dictates must not be taken lightly; once a state court of competent jurisdiction has made a finding of fact after a properly adversarial hearing, it is not the role of the federal courts, in the absence of an explicit finding of one of the eight prerequisites for intervention recited in section 2254(d), to intrude.

■ In this case, petitioner, on his request, clearly had a hearing on the denial of compulsory process in a state court of competent jurisdiction. Both petitioner and the State were before that court. Petitioner does not contest this, nor does he assert that findings of a state court sitting in habeas are somehow due less respect in the federal courts than are findings of state trial or appellate courts. Rather, petitioner merely asserts that the state court's factual findings "[miss] the point of Petitioner's claim." Brief for Appellant at 25.

It is evident that petitioner has had a full and fair opportunity to explore the facts of his compulsory process claim in the state courts. A competent state court has made explicit factual findings adverse to petitioner. The "interest in federalism recognized by Congress in enacting § 2254(d) requires deference by federal courts to factual determinations of all state courts." *Sumner*, 101 S.Ct. at 764. The district court found none of section 2254(d)'s exceptions applicable and, thus, properly has accorded the state court this deference. We will not disturb its sound and Congressionally mandated decision.

The judgment of the district court denying the writ is, accordingly,

AFFIRMED.