**John Edward PICKETT,**
**Petitioner-Appellee,**

v.

**George BOWEN, Warden; Charles A. Graddick, Attorney General,**
**Respondents-Appellants.**

No. 85–7718.

United States Court of Appeals,
Eleventh Circuit.

Sept. 9, 1986.

---

**1386**

Martha Gail Ingram, Asst. Atty. Gen., Montgomery, Ala., for respondents-appellants.

C. Winston Sheehan, Jr., Montgomery, Ala., for petitioner-appellee.

Before RONEY, Chief Judge, and CLARK, Circuit Judge, and DOYLE *, Senior District Judge.

* Honorable James E. Doyle, Senior U.S. District Judge for the Western District of Wisconsin, sitting by designation.

PER CURIAM:

The State of Alabama has appealed the district court's conditional grant of the writ of habeas corpus to petitioner. We have reviewed the record and affirm the opinion of the district court which is printed at 626 F.Supp. 81 (N.D.Ala.1985).

Our review confirms the district court's conclusion that the medical report was crucial within the meaning of *Ohio v. Roberts,* 448 U.S. 56, 65 n. 7, 100 S.Ct. 2531, 2538 n. 7, 65 L.Ed.2d 597 (1980) and *Dutton v. Evans,* 400 U.S. 74, 87–89, 91 S.Ct. 210, 219–20, 27 L.Ed.2d 213 (1970) (Stewart, J., plurality opinion).

In *Roberts,* the Supreme Court explained that the confrontation clause of the Sixth Amendment "operates in two separate ways to restrict the range of admissible hearsay." 448 U.S. at 65, 100 S.Ct. at 2538. First, in "the usual case ..., the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant." *Id.* If a witness is shown to be unavailable, the second part of the test in *Roberts* allows the admission of the hearsay only if "there 'are indicia of reliability which have been widely viewed as determinative of whether a statement may be placed before the jury though there is no confrontation of the declarant,' *Dutton v. Evans, supra,* at 89, 91 S.Ct., at 220 and [sufficient] to 'afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement,' *California v. Green, supra* 399 U.S. [149], at 161, 90 S.Ct. [1930], at 1936 [26 L.Ed.2d 489 (1970)]." *Mancusi v. Stubbs,* 408 U.S. 204, 213, 92 S.Ct. 2308, 2313, 33 L.Ed.2d 293 (1972), *quoted in Roberts,* 448 U.S. at 65, 100 S.Ct. at 2539.

The record in this case clearly establishes that the prosecution failed to establish unavailability. The Court in *Roberts* went on, however, to note: "A demonstration of unavailability, however, is not always required. In *Dutton v. Evans,* for example,

the Court found the utility of trial confrontation so remote that it did not require the prosecution to produce a seemingly available witness." 448 U.S. at 65 n. 7, 100 S.Ct. at 2538 n. 7 (citation omitted). Reference to *Dutton* reveals that a showing of unavailability of a witness is not required where the hearsay evidence is "peripheral" and not "crucial" or "devastating," it is reliable, there is no evidence of prosecutorial misconduct or negligence, 400 U.S. at 87–89, 91 S.Ct. at 219–20 (Stewart, J., plurality opinion), and the witness' "production would be unduly inconvenient and of small utility to a defendant." *Id.* at 96, 91 S.Ct. at 223 (Harlan, J., concurring).

The "crucial" rather than "peripheral" nature of the medical report introduced in this case is obvious in light of the following facts: The medical report was the only medical evidence introduced to establish a key element of the crime: sexual contact. The only other evidence of sexual contact was the testimony of the alleged victim, who admitted having previously fabricated a similar charge against the defendant's stepson and also admitted that she did not want her mother to marry the defendant. The testimony of two teachers of the alleged victim indicated that she had a history of being untruthful and making up stories and that these teachers would not believe that she had in fact been sexually abused until shown medical evidence supporting her accusation.

The utility to the defendant of the ability to examine at trial the doctor who had authored this report is also readily apparent here from the doctor's testimony at the habeas corpus hearing. At the habeas hearing, the doctor testified that the erythema which he observed on the interior wall of the alleged victim's vaginal vault was most likely the result of three to five minutes of irritation caused by manipulation, possibly manipulation by the alleged victim herself. He further testified that this erythema was unlikely to "have been caused by a single sticking of an index finger halfway in the vagina of [the alleged victim] and then removing it." Record, Vol. 2 at 11–12. However, the testimony of

the alleged victim at trial and her statement to a Montgomery police investigator both indicated that the defendant had placed his left index finger halfway inside of her vagina and then immediately removed it and did not indicate that he had further manipulated her vagina in any way. *See* Record, Vol. 2 at 25; State Court Trial Transcript at 21, 29–30, 32–33.

Thus, the doctor's testimony, if presented to the jury, could have affected the verdict in this case. As such, this case both demonstrates and reinforces the very logic of the Sixth Amendment's provision of the right of a defendant to confront and cross-examine the witnesses against him.

AFFIRMED.