**UNITED STATES of America, Plaintiff–Appellee,**

v.

**James Stanley BENTLEY, Defendant–Appellant.**

No. 88–1606.

United States Court of Appeals, Fifth Circuit.

June 12, 1989.

Rehearing and Rehearing En Banc Denied Aug. 2, 1989.

Charles Louis Roberts, El Paso, Tex., for defendant-appellant.

Delonia A. Watson, Asst. U.S. Atty., Dallas, Tex., Steven M. Sucsy, Roger L. McRoberts, Asst. U.S. Attys. Gen., Marvin Collins, U.S. Atty., Lubbock, Tex., for plaintiff-appellee.

Before BROWN, WILLIAMS and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

James Stanley Bentley appeals from a conviction for drug offenses, asserting various errors in the trial court. We affirm.

I

On September 16, 1987, a radar operator for the United States Customs Service detected an airplane on the Mexican side of the border heading toward the United States. Radar tracked the plane, and customs aircraft followed it. Eventually, the plane ran out of fuel and crashed near Lubbock, Texas. Bentley, the sole passenger in the plane, ran away from the wreck across a field and then lay face down. Customs agents, who had landed their aircraft nearby, found Bentley conscious but injured, with a brief case containing personal items and a change of clothing. In the wrecked plane, the agents detected a strong odor of marijuana. They also found in the plane a current driver's license, an expired driver's license, a credit card and a business card belonging to Bentley, and they found marijuana scattered around the crash site. Bentley was given first aid and taken to the hospital. The pilot, who had been pinned in the wreck, was also taken to the hospital but did not survive.

Bentley was charged with five counts of possessing, smuggling, and importing marijuana and conspiracy, in violation of federal statutes. *See* 18 U.S.C. § 2 (aiding and abetting); 18 U.S.C. § 545 (fraudulent and knowing concealment and facilitation of the transportation of merchandise imported contrary to law); 19 U.S.C. § 1484 (requirements for entry of merchandise); 21 U.S.C. § 841(a)(1) (possession of controlled substance with intent to distribute); 21 U.S.C. § 952 (importation of controlled substance); 21 U.S.C. § 955 (possession of controlled substance aboard an aircraft); and 21 U.S.C. § 963 (drug conspiracy). A pretrial order instructed the prosecution to disclose various items at least three days before trial, including evidence of extraneous offenses, statements made by the defendant to law enforcement officials, and names of witnesses. Defense counsel did not receive this information until Sunday evening, May 1, 1988, the night before trial. The prosecution claims, however, that on the previous Friday it had attempted to contact defense counsel regarding discovery. On defendant's motion in limine, the trial court declined to sanction the government by excluding evidence of prior extraneous offenses and the defendant's statements to customs agents.

During trial, the prosecution put into evidence medical records from Lubbock General Hospital, detailing Bentley's medical condition and treatment after being taken to the hospital from the wreck. The records included the results of a urine test revealing the presence of cannabinoids (found in marijuana) in Bentley's system. The prosecution also put on the stand the custodian of records at Lubbock General. The defendant's objection to admission of the records was overruled.

The defendant also objected, at least during an informal discussion, to the following jury instruction relating to the two counts that involved facilitation of transportation of marijuana: "Proof of defendant's possession of such goods, unless explained to the satisfaction of the jury, shall be deemed evidence sufficient to authorize conviction for violation of this section." The court deleted the clause "unless explained to the satisfaction of the jury." The defense then objected generally to any denial of its requested instructions and to the inclusion of any instruction it had opposed. The trial court overruled these objections.

Bentley was convicted of all five counts and filed a timely notice of appeal.

## II

We first consider whether Bentley's conviction must be reversed because, as he argues, the trial court erred in admitting the medical records into evidence. At trial the defendant objected, correctly, that the medical records were hearsay. *See* Fed.R. Evid. 801. The court admitted the evidence, however, under the business record exception. *See* Fed.R.Evid. 803(6). The defendant argues that treating the medical records as admissible under the business record exception was contrary to the rules. He relies primarily on *United States v. Oates*, 560 F.2d 45 (2d Cir.1977). In *Oates*, the prosecution introduced a report from a government lab that had analyzed and identified a substance as heroin. *Id.* at 63. Since it was a criminal case, admission of the report as a public record under Rule 803(8) was not allowed. The Second Circuit held that the report expressly excluded under the public record exception was similarly inadmissible under Rule 803(6) as a business record. *Id.* at 63–84. The Fifth Circuit followed *Oates* in *United States v. Cain*, 615 F.2d 380, 382 (5th Cir.1980), stating that "[f]or the reasons set forth in *Oates*, we conclude that statements inadmissible as public agency reports under Rule 803(8) may not be received merely because they satisfy Rule 803(6) and that section (6) does not open a back door for evidence excluded by section (8)". *But see United States v. Quezada*, 754 F.2d 1190, 1193 (5th Cir.1985) (disapproving *Oates*). Bentley further argues that, even if not technically an error under the rules, the admission of the records was constitutionally improper since he had no opportunity to confront and cross-examine the individual behind the medical report. Specifically, the defense lacked the opportunity to question the type of test used, the chain of custody, the efficacy of the test, possible confusion of substances, the odds of false positives, and the qualifications of the technician, doctor, or whoever performed the test. Bentley contends that, as a result, he was deprived of his sixth amendment right to confront witnesses against him. *See generally Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).

It is unnecessary to reach these questions, however, if the alleged errors were sufficiently harmless. The Federal Rules of Criminal Procedure provide that any error which does not affect substantial rights shall be disregarded. Fed.R.Crim. Pro. 52(a). Furthermore, even constitutional error may be deemed harmless when it is found to be harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). Thus, an error is harmless where, after reviewing the facts of the case, the evidence adduced at trial, and the impact the constitutional violations had on the trial process, the evidence unrelated to the alleged constitutional violation "remains not only sufficient to support the verdict but so overwhelmingly as to establish the guilt of the accused beyond a reasonable doubt." *Germany v. Estelle*, 639 F.2d 1301, 1303 (5th Cir.1981) (*quoting Harryman v. Estelle*, 616 F.2d 870, 876 (5th Cir.1980)). *See also United States v. Hastings*, 461 U.S. 499, 512, 103 S.Ct. 1974, 1982, 76 L.Ed.2d 96 (1983). This rule has been applied to cases where evidence was admitted in violation of the constitutional right to confront witnesses. *See, e.g., Harrington v. California*, 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284 (1969); *Hoover v. Beto*, 467 F.2d 516, 534–39 (5th Cir.1972). Furthermore, constitutional error has been found harmless in circumstantial evidence cases. *Zilka v. Estelle*, 529 F.2d 388, 392 (5th Cir.1976); *but see Fontaine v. California*, 390 U.S. 593, 596, 88 S.Ct. 1229, 1231, 20 L.Ed.2d 154 (1968) (constitutional error not harmless beyond a reasonable doubt where jury was asked to convict based on circumstantial evidence). Indeed, alleged constitutional error involving a urine test has been found harmless. *See Spears v. Circuit Court, Ninth Jud'l Dist., Warren Cty., Miss.*, 517 F.2d 360 (5th Cir.1975). In *Spears*, a criminal defendant argued that she was denied her right to confront adverse witnesses by the state's failure to produce all laboratory personnel who participated in the pregnancy test which was used as evidence of an essential element in the prosecution for abortion. *Id.* at 364–65.

This court held that, assuming arguendo that constitutional error was committed, it was harmless beyond a reasonable doubt where other evidence fully supported the jury's finding of pregnancy. *Id* at 367.

In this case, the other evidence of Bentley's guilt leaves us with no doubt that any error involving Bentley's right to confront witnesses was harmless. It is obvious that Bentley was in the airplane that came from Mexico, attempted to evade the authorities and crashed only when it ran out of gas. That he was one of only two people in the airplane, especially when unexplained by any evidence in the case, is thoroughly damning. It is further obvious that a substantial quantity of marijuana was in the airplane and that it was discharged from the airplane while in flight. Customs agents testified that a strong odor of marijuana was present in the airplane even after the crash. An El Paso police officer testified that in 1986 she caught Bentley smoking marijuana and in possession of a small amount of additional marijuana when she pulled him over for speeding. This testimony was admitted into evidence for the purpose of establishing Bentley's familiarity with marijuana and to prove that, given the strong odor of marijuana in the airplane, Bentley could not have been an unknowing bystander. These facts, completely aside from the medical records challenged on appeal, would have compelled a reasonable jury to convict Bentley. In other words, we are convinced beyond a reasonable doubt that, even in the absence of the report showing the presence of cannabinoids in Bentley's system, no reasonable juror would have voted to acquit. The report added very little to the evidence before the jury. It indicated only that Bentley was familiar with marijuana, including its smell, when that familiarity was independently demonstrated by the El Paso police officer's testimony. Jurors are instructed to use their common sense. Given these facts, no reasonable person would have concluded that Bentley was an innocent hitchhiker. Thus, even if the admission of the records violated the hearsay rules or the confrontation clause, an issue

we do not decide, such error was harmless beyond a reasonable doubt.

## III

 The next question is whether the trial court improperly declined to exclude evidence as a sanction against the government for untimely disclosure of prior extraneous transactions, statements made to officers and a witness list. The defense argues that it had insufficient notice, contrary to a pretrial discovery order, of the prosecution's intent to introduce evidence of three prior extraneous offenses and evidence of statements made by Bentley to customs agents, as well as a list of intended witnesses. The government responds that it was unable to contact defense counsel, and that it then filed the information with the court. In addition, the government claims that Bentley had no right under the order or otherwise to the officer's reports. Bentley nevertheless argues that the evidence of extraneous offenses and his statements to customs agents should have been excluded as a sanction against the government for failing to comply with the court's discovery order.

The district court has the power to remedy a party's failure to comply with discovery. Fed.R.Crim.Pro. 16(d)(2). The district court has broad discretion under this rule. *United States v. Sarcinelli,* 667 F.2d 5 (5th Cir.1982). In exercising this discretion, the district court should consider factors such as the reasons why disclosure was not made, the prejudice to the opposing party, the feasibility of rectifying that prejudice by granting a continuance, and other relevant circumstances. *Id.* at 6–7. "This means that the court should impose the least severe sanction that will accomplish the desired result—prompt and full compliance with the court's discovery order." *Id.* at 7. The defendant here has not shown that any violation of the discovery order by the government necessitated the most extreme sanction possible. Accordingly, we hold that the district court did not abuse its discretion when it decided not to exclude the evidence of extraneous of-

fenses and Bentley's statements, as requested by the defense.

## IV

Finally, we address whether the jury instruction on evidence of possession as sufficient to prove fraudulent and knowing concealment and facilitation of transportation was erroneous, and whether any objection was waived. Bentley argues that the jury instruction on counts one and five allows evidence of mere possession to shift the burden to the criminal defendant of disproving fraudulent and knowing concealment and transportation; he complains that shifting the burden violated his right to remain silent and his right to have the government prove his guilt beyond a reasonable doubt.

The government primarily relies on its position that any objection was waived. Defense counsel successfully requested the deletion of the clause "unless explained to the satisfaction of the jury." Counsel appears to have been fully satisfied with the court's ruling since he pressed no further objection except for a later general objection. Under the circumstances, the government is correct that the specific objection was not preserved. Thus we will not reverse the conviction based on Bentley's argument that the instruction violated his constitutional rights unless the jury instruction was plain error. *See* Fed.R.Crim. Pro. 52(b). Plain errors are those which strike at the fundamental fairness, honesty, or public reputation of the trial. *United States v. Ortega–Chavez*, 682 F.2d 1086, 1088 (5th Cir.1982) (quoting *United States v. Perez*, 651 F.2d 268, 273 (5th Cir.1981)).

We hold that the instruction was not plain error. In addition, even if the instruction were erroneous, it was harmless beyond a reasonable doubt. *Chapman*, 368 U.S. at 24, 87 S.Ct. at 828. The instruction, as originally proposed, came directly from the statute, which provides in part:

Whoever fraudulently or knowingly imports or brings into the United States, any merchandise contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law—

Shall be fined not more than $10,000 or imprisoned not more than five years, or both.

Proof of defendant's possession of such goods, unless explained to the satisfaction of the jury, shall be deemed evidence sufficient to authorize conviction for violation of this section.

18 U.S.C. § 545. The instruction required all that this statute requires. As a result, Bentley's appeal on this issue translates into an argument that the statutory presumption itself is unconstitutional. Whatever the merits of such an argument may be in other cases, *see, e.g., United States v. Matalon*, 425 F.2d 70 (2d Cir.1970) (instruction including statutory presumption in 18 U.S.C. § 545 was not unconstitutional), Bentley's fundamental rights have not been violated here. For the reasons we have earlier noted, the government presented evidence sufficient to compel an inference of guilt as to all elements of the offenses charged beyond a reasonable doubt, independently of the statutory presumption allowing conviction for smuggling upon proof of mere possession. *See, e.g., Walker v. United States*, 433 F.2d 306 (5th Cir.1970) (although presuming importation of marijuana from fact of possession under 21 U.S.C. § 176a is unconstitutional, error was harmless where no reliance was placed on the presumption); *Matalon*, 425 F.2d at 74 ("[t]he Government's case was so conclusive that the jury, quite apart from any reliance upon the Section 545 statutory permissible inference, could find the defendant guilty beyond a reasonable doubt"). Moreover, the charge as given did not expressly suggest that the burden of proving Bentley's guilt had shifted from the government, or that Bentley was required to prove his innocence. Thus, we see no plain error, and in addition hold that any error in the instruction was harmless beyond a reasonable doubt.

## V

In conclusion, we find no basis for reversing Bentley's conviction. First, any error committed by allowing the medical records into evidence was harmless beyond a reasonable doubt. Second, the district court did not abuse its discretion in deciding not to exclude evidence as a discovery sanction. Finally, the jury instruction did not constitute plain error. Bentley's conviction is therefore

AFFIRMED.

JERRE S. WILLIAMS, Circuit Judge, dissenting:

I concur in parts III and IV of the majority opinion.[1] The majority errs, however, in holding that it was harmless error to admit as a business record a laboratory report that indicated, simply by the presence of a check mark, that Bentley's urine tested positive for marihuana use.[2] The majority concludes that this evidence was inconsequential, suggesting that Bentley is unquestionably guilty of importing and possessing marihuana because he was a passenger in a plane transporting odiferous drugs. I cannot join in this misapplication of the harmless error analysis. Moreover, I conclude that the constitutional right to confront adverse witnesses is violated by admitting the results of a urine drug test as a business record when the laboratory report contained no indication of how the test was conducted and the defendant had no opportunity to elicit this information on cross-examination.

### I. Harmless Error

The majority holds that any error in admitting the positive results of Bentley's urine drug test was harmless. They correctly cite the test for harmless error: error is harmless where, after reviewing the

facts of the case and surrounding circumstances, the evidence unrelated to the alleged constitutional violation "remains not only sufficient to support the verdict but so overwhelming as to establish the guilt of the accused beyond a reasonable doubt." *Germany v. Estelle*, 639 F.2d 1301, 1303 (5th Cir.), *cert. denied*, 454 U.S. 850, 102 S.Ct. 290, 70 L.Ed.2d 140 (1981). In applying this test, however, the majority simply concludes that "it is obvious" that Bentley was a passenger in the plane, that marihuana was discharged from the plane during flight (this evidence is not obvious although it is a distinct possibility), and that the odor of marihuana was present when the plane crashed. *Supra*, p. 1118. Some of this may be obvious, but it is not evidence of Bentley's guilt that is so overwhelming that we can be certain beyond a reasonable doubt that the laboratory test indicating Bentley's marihuana use did not contribute to the guilty verdict. *See Chapman v. California*, 386 U.S. 18, 23–24, 87 S.Ct. 824, 827–28, 17 L.Ed.2d 705 (1967).

Harmless error "is an exacting standard that must be uncompromisingly applied." *Harryman v. Estelle*, 616 F.2d 870, 876 (5th Cir.), *cert. denied*, 449 U.S. 860, 101 S.Ct. 161, 66 L.Ed.2d 76 (1980). Error is harmless only when the evidence is unusually strong and convincing, so that no reasonable doubt remains as to the disputed issue. *See Spears v. Circuit Court, Ninth Judicial Dist.*, 517 F.2d 360, 366–67 (5th Cir.1975) (In prosecution of midwife for performing illegal abortion, it was harmless error for the state to have failed to call as witnesses the nurse and receptionist at the laboratory that performed the pregnancy test on the woman who received the abortion. The error was harmless because the testimony of two physicians, the lab technician who performed the pregnancy test, and the woman who received the abortion conclusively established her preg-

---

1. In part IV, I agree with the majority that Bentley failed to preserve his objection to the contested jury charge, and that the alleged error was not plain error. I do not join in the majority's determination that the error was also harmless.

2. Congress has identified the controlled substance in this case as "marihuana." 21 U.S.C. § 812(c), Schedule I(c)(10) (1982). I follow the spelling of the name of the drug that is used in the official text of the federal statute.

nancy).[3] We simply do not encounter this type of overwhelming evidence in the present case.

The majority concludes that the fact "that [Bentley] was in the airplane, especially when unexplained by any evidence of the case, is thoroughly damning." *Supra*, p. 1118. The clear implication of this statement is that an individual's presence when a drug crime is being committed is conclusive evidence of his guilt. This Court, however, has consistently held to the contrary. Mere presence at the site of criminal activity is not sufficient evidence to convict an individual of participating in a drug conspiracy or possessing a controlled substance. *United States v. Espinoza–Seanez*, 862 F.2d 526, 537 (5th Cir.1988). *See also United States v. Sneed*, 705 F.2d 745, 749–50 (5th Cir.1983) (Son was present when twenty men congregated on his father's property to unload approximately 35,000 pounds of marihuana from a boat during the night. This evidence was found insufficient to sustain the son's conviction for possessing marihuana with intent to distribute). The fact that the smell of marihuana pervaded the plane and the crash site is also not overwhelming evidence of Bentley's guilt. In words particularly applicable to this case, we have noted that "it is not enough for [the evidence] merely to establish a climate of activity that reeks of something foul." *United States v. Galvan*, 693 F.2d 417, 419 (5th Cir.1982).

In short, the fact that Bentley was a passenger (and not the pilot) of an airplane

that contained marihuana, while certainly evidence of his guilt, is not so overwhelming as to render any other improperly admitted evidence harmless beyond a reasonable doubt. Moreover, in holding that any error in admitting the laboratory report was harmless, the majority fails to consider the impact this evidence had on Bentley's defense. Throughout the trial, Bentley's counsel argued that the government had failed to prove that Bentley had knowledge of the criminal activity and possession of the marihuana. In support of this defense, the trial testimony indicated that Bentley ran a business selling Mexican folk art, and thus had a legitimate reason to travel to and from Mexico. The evidence also established that it was the pilot who purchased, fueled, and flew the plane; Bentley was not licensed to fly.

The laboratory report indicating that Bentley's urine tested positive for marihuana after the crash severely undermines Bentley's contention that he did not possess the marihuana. It is for this reason, of course, that the government specifically mentioned the positive urine test in its closing argument.[4] In view of Bentley's defense and the circumstantial evidence upon which the government relied, the admission of the laboratory report, which provided the only physical evidence linking Bentley to marihuana, was not harmless error.

## II. Admission of the Laboratory Report

Turning to the merits of Bentley's claim, I conclude that the admission of the labo-

---

3. The majority cites the *Spears* case for the proposition that "alleged constitutional error involving a urine test has been found harmless." *Supra*, p. 1118. In that case, however, the evidence supporting the results of the test was indeed overwhelming—two physicians, the lab technician, and the formerly pregnant woman all confirmed that she was pregnant when the abortion was performed. In the present case, there is absolutely no confirmation of the results of Bentley's urine test, and the rest of the evidence supporting the conviction is circumstantial.

The majority's citation to *Spears* is not only inapposite, it is also ironic given the prior history of that case. The original conviction of the midwife was reversed after the Mississippi Su-

preme Court concluded that the failure of the lab technician to testify in the first trial violated the defendant's right to confront adverse witnesses guaranteed by the Mississippi constitution. *Spears v. State*, 241 So.2d 148 (Miss.1970).

4. The prosecutor stated:

The records of Lubbock General Hospital ... the third page here shows that while [Bentley] was in the hospital on the 17th of September, 1987, at 4:45 AM, it's marked urine and bladder, urine drug screen, and you do down here and you get to cannibinoids. You remember what the cannabinoids are? You notice that there's a check mark right there, positive. Again indicating the knowledge of this man with respect to marihuana.

ratory report, under the particular circumstances of this case, violated Bentley's right to confront adverse witnesses guaranteed by the Sixth Amendment.[5] The laboratory report was admitted pursuant to the business record exception to the hearsay rule. Fed.R.Evid. 803(6).[6] The fact that evidence was properly admitted under the Federal Rules of Evidence does not, however, automatically satisfy the dictates of the Constitution. Indeed, the Supreme Court has rejected the view that the requirements of the Federal Rules of Evidence and the Confrontation Clause are completely congruous. *California v. Green*, 399 U.S. 149, 155–56, 90 S.Ct. 1930, 1933–34, 26 L.Ed.2d 489 (1970). *See also United States v. Washington*, 688 F.2d 953, 959 (5th Cir.1982).

5. "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const.Amend. VI.

6. In addition to his constitutional claim, Bentley argues that the report was improperly admitted as a business record under Fed.R.Evid. 803(6) because it was inadmissible under Fed.R.Evid. 803(8), which provides that certain public records cannot be admitted against the accused in a criminal case. *See United States v. Cain*, 615 F.2d 380, 382 (5th Cir.1980). The record in this case, however, does not support Bentley's contention that the laboratory report would be inadmissible as a public record. We have no information regarding the public affiliation of the hospital or lab where the test was conducted. Nothing in the record indicates that the laboratory test was conducted under the auspices of the police or other law enforcement officials. In short, Bentley has failed to point to any evidence which suggests that the exception he relies upon applies in this case.

7. The *Roberts* court set out a general test for determining when the admission of hearsay violates a defendant's right to confront adverse witnesses:

In sum, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate 'indicia of reliability'. Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantee of trustworthiness.

448 U.S. at 66, 100 S.Ct. at 2539. Later cases make clear, however, that this test is only a

The Confrontation Clause protects "the accuracy of the truth-determining process in criminal trials by assuring that the trier of fact has a satisfactory basis for evaluating the truth of [a] prior [out-of-court] statement." *Dutton v. Evans*, 400 U.S. 74, 89, 91 S.Ct. 210, 220, 27 L.Ed.2d 213 (1970). In determining whether hearsay can be admitted consistent with this constitutional guarantee, the focus is on the "indicia of reliability" accompanying a statement. *Mancusi v. Stubbs*, 408 U.S. 204, 213, 92 S.Ct. 2308, 2313, 33 L.Ed.2d 293 (1972). Evidence admitted pursuant to a "firmly rooted" exception to the hearsay rule is usually, but not always, found to be sufficiently reliable to comport with constitutional requirements. *See Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980).[7]

guideline that "should not be read as an abstract answer to questions not presented in that case." *United States v. Inadi*, 475 U.S. 387, 392, 106 S.Ct. 1121, 1125, 89 L.Ed.2d 390 (1986). Recently, the Supreme Court has referred to the *Roberts* analysis in more qualified terms, stating that "the Court has, as a general matter only, required the prosecution to demonstrate both the unavailability of the declarant and the 'indicia of reliability' surrounding the out-of-court declaration." *Bourjaily v. United States*, 483 U.S. 171, 182, 107 S.Ct. 2775, 2782, 97 L.Ed.2d 144 (1987).

The language in *Roberts* suggesting that reliability can be inferred "without more" when evidence falls under a well-settled hearsay exception has not been construed as an absolute rule. Indeed, elsewhere in the opinion, the Supreme Court stated that "certain hearsay exceptions rest upon such solid foundations that admission of *virtually* any evidence within them comports with the substance of the constitutional protection." 448 U.S. at 66, 100 S.Ct. at 2539 (emphasis added). *See also Puleio v. Vose*, 830 F.2d 1197, 1207 (1st Cir.1987), *cert. denied*, — U.S. —, 108 S.Ct. 1297, 99 L.Ed.2d 506 (1988) ("[T]he mere fact that a ... court, in admitting evidence, tucks it into a pigeonhole which bears the label of a time-honored hearsay exception cannot be entirely dispositive"). Courts have found that evidence admitted pursuant to the business record exception to the hearsay rule can, in certain situations, violate a defendant's right of confrontation. *See e.g., United States v. McClintock*, 748 F.2d 1278, 1291–92 (9th Cir. 1984), *cert. denied*, 474 U.S. 822, 106 S.Ct. 75, 88 L.Ed.2d 61 (1985). *See also United States v. Washington*, 668 F.2d at 959 (This Court found that evidence was properly admitted as a business record, but remanded the case for the district court to determine whether the Confrontation Clause was violated).

The government concedes that Bentley's contention that the admission of the laboratory report violated his right of confrontation is "troubling." The government argues, however, that this information is sufficiently reliable so that no constitutional problem arises. But the laboratory report in this case indicated by the presence of a simple check mark on an extensive form that Bentley's urine tested positive for cannibinoids. The report summarized the results of an unidentified test conducted by an anonymous technician. At trial, the government called only the medical records custodian to testify that the laboratory report was kept as a part of Bentley's hospital records. Thus, Bentley had no opportunity to learn the type of test conducted, the chain of custody of the substance tested, and the qualifications of the laboratory personnel.

In short, none of the indicia of reliability that are usually present when the results of a laboratory drug test are admitted into evidence accompanied the report in this case.[8] Other courts have concluded that medical reports admitted "without a detailed explication of either the facts or reasoning processes on which they were based" violate a defendant's right to confront adverse witnesses. *Phillips v. Neil,* 452 F.2d 337, 347 (6th Cir.1971), *cert. denied,* 409 U.S. 884, 93 S.Ct. 96, 34 L.Ed.2d 141 (1972); *Pickett v. Bowen,* 626 F.Supp. 81, 85 (M.D.Ala.1985), *aff'd per curiam,* 798 F.2d 1385 (1986). This is a sound rule to apply in the drug testing context, where some of the common laboratory procedures produce a high rate of false positive results and are considered adequate only for screening purposes.[9]

This Court has expressly recognized that the reliability of urine drug tests varies greatly according to the type of laboratory procedure employed.[10] When a laboratory report omits this crucial information, and no witness is available at trial to explain the testing procedure, there is no way to determine if the test results are reliable. The laboratory report in this case, which contained a check mark and nothing more, is simply hearsay without any indicia of reliability. As such, its admission into evidence violated Bentley's constitutional right to confront adverse witnesses.

### III. *Conclusion*

As the majority concedes, Bentley's conviction rests on circumstantial evidence. The results of a laboratory test indicating marihuana use was the only physical evidence linking Bentley to marihuana. The admission of the laboratory report into evidence was error and was not harmless.

Bentley had no opportunity to question the accuracy of the laboratory report indicating that his urine tested positive for marihuana use. A check mark alone was deemed sufficiently reliable to overcome

---

**8.** Significantly, the lab technician who tested the substance found at the crash site was called to testify at trial in order to establish that the substance was marihuana. A second technician who conducted tests on a substance that was presumably dropped from the plane also testified. Both lab technicians gave a complete account of the chain of custody of the substance, the type of tests conducted, and the bases for their conclusion.

**9.** Many of the tests for identifying marihuana are not specific. This means that other drugs and chemicals present in the urine can lead to a false positive result. Giannelli and Imwinkelried, Scientific Evidence, § 23–2, pp. 933–34 (1986). Two of the common tests for detecting marihuana use, the EMIT and RIA tests, produce inconclusive results that require confirmation by other testing methods. Note, *Admissibility of Biochemical Urinalysis Testing Results for the Purpose of Detecting Marihuana Use,* 20 Wake Forest L.Rev. 391, 393–94, 409 (1984). The fact that the laboratory report of Bentley's drug test was labeled "Urine Drug Screen" might suggest that one of these inconclusive screening procedures was used. Unfortunately we, like Bentley, have no way of knowing if this was the case.

**10.** In *Nat'l Treasury Employees Union v. Von-Raab,* 816 F.2d 170 (5th Cir.1987), *aff'd in part,* —— U.S. ——, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989), we considered the reliability of the Customs Service drug-testing program. We noted that "the initial screening test, EMIT, may have too high a rate of false-positive results for the presence of drugs." 816 F.2d at 181. We concluded, however, that the Customs Service drug testing program was not so unreliable as to violate due process because "the follow-up test, GC/MS, is almost always accurate, assuming proper storage, handling, and measurement techniques." *Id.*

**1124**

his right to confront adverse witnesses. Bentley was implicated by the results of an unidentified test conducted by an anonymous technician. This surely violates the core value protected by the Confrontation Clause: the opportunity to face one's accuser face-to-face, with the concomitant ability to cross-examine the witness.

In an era where urine drug testing is increasingly common, reports of positive tests will undoubtedly appear, not infrequently, in criminal trials. Under the Confrontation Clause, a defendant must be afforded the opportunity to ascertain how this devastating information was obtained. The Constitution does not allow a simple check mark on a piece of paper to be used to establish conclusively the drug use of a criminal defendant. I must dissent. The case should be reversed for a new trial.